## ARTHUR E. LUX v. JACK L. ROBINSON.

96 N. W. (2d) 385.

May 8, 1959—No. 37,598.

*Elmer R. Anderson* and *W. R. Poseley,* for appellant.
*William T. Johnson,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order denying defendant's motion for amended findings of fact, conclusions of law, and order for judgment or for a new trial.

In November 1946, plaintiff and his wife purchased an unassembled miniature doll house from one Edna King for the sum of $2,200. The doll house, built to one-fourth of life size, was 24 feet long and 6 feet high. At the time of the purchase, the doll house itself was stored in a warehouse in Minneapolis, and numerous miniature articles of furniture, furnishings, and dolls representing an era of 50 to 100 years ago were stored in other places. At the time of purchase from Mrs. King, the doll house and its contents were not being displayed as a going business. Plaintiff and his wife made many substantial improvements and additions thereafter to the doll house and contents and then dis-

played it at the Minnesota State Fair during the years 1947 to 1953, inclusive, under the name of "Lux Doll House in Miniature" and "Lux Memory Doll House." In addition to the display at the Minnesota State Fair, where an admission charge of 25 cents per person was made, the doll house was displayed in other states. Sometimes an admission charge was made, and at other times the showing was free. During the 6 years of operation of the doll house at the Minnesota State Fair, for a period of 10 days each year or a total of 60 days, the income, after deducting rent and Federal taxes, amounted to $10,868.35. The record does not show what revenue was derived from exhibiting the doll house in other states, but it is apparent that during the time it was exhibited by plaintiff and his wife it was viewed by many thousands of people.

During the display of the doll house in Minnesota and elsewhere it acquired considerable journalistic attention. Plaintiff and his wife made it a practice to photostat many of the newspaper articles written and to post them, together with photographs, in prominent places around the exhibit in order to attract patrons. They also collected other data on the doll house, which was utilized for the same purpose, and they maintained a book in and around the display which was signed by many of those who viewed the exhibit with expressions of their impression thereof.

During the years 1952 and 1953, plaintiff also operated another concession at the Minnesota State Fair known as the "Seifert Quadruplets," leaving his wife to operate the doll house alone. Mrs. Lux then was seriously suffering from cancer and operated the concession during 1953 with considerable difficulty. On March 22, 1954, because of his wife's ill health, plaintiff contacted defendant and offered to sell him the Lux display doll house and contents for $10,000. Defendant is an experienced businessman who has owned and operated a merchandise prize contest distribution business in Minneapolis for a number of years. He also owns and operates a restaurant, waffle shop, and barbecue pit at the state fair grounds during the state fair. He has been an active concession operator at the fair since prior to the time when plaintiff began to exhibit the doll house there. Two of his concessions are on the same street and one is located within 15 feet of the place where the doll house was exhibited. He had been in and had viewed the doll house many times prior to the time when he was contacted by plaintiff in 1954.

This litigation arises out of the dealings had between the parties at the time the doll house was purchased, and the testimony of plaintiff and defendant is in hopeless conflict as to what took place. It is not disputed that plaintiff first contacted defendant in March 1954 at defendant's place of business and offered to sell the display to him. They talked for about 10 minutes, and at that time plaintiff left with defendant exhibits K and L, which are portfolios containing photographs of the various rooms of the exhibit and people viewing them, reports, and newspaper articles about the doll house. Some of these newspaper articles state that the contents of the doll house are genuine antiques collected by plaintiff and his wife from all parts of the world over a period of 30 to 35 years. Other articles state that the miniatures are "authentic." On one of the news clippings may be found the statement that "Mrs. Lux, an antique dealer * * * purchased much of the collection a year ago from Mrs. Edna King, who spent 25 years assembling it." Defendant kept these portfolios with him and the parties met again a few days later, at which time defendant had decided to purchase the doll house. He then drew up an unsigned memorandum of the terms of sale. Plaintiff took this memorandum and from it prepared a typewritten form, which was signed by both parties the next day, March 25. This typewritten instrument was considered as an earnest money contract. By its terms the deal was subject to a provision that defendant would purchase if he was able to obtain the same location at the state fair that plaintiff had formerly used.

On April 16 following, plaintiff, his wife, and defendant met at the office of defendant's attorney in Minneapolis, where a formal bill of sale was drafted and executed by all the parties. The purchase price was $10,000, of which $5,000 was paid in cash at the time of execution of the bill of sale and the balance was evidenced by a promissory note due in the future.

It is the contention of defendant that by virtue of the portfolios, exhibits K and L, plaintiff represented to him that all the contents of the doll house were genuine miniature antiques. Neither the memorandum prepared by defendant, the typewritten earnest money contract, nor the bill of sale refers to the contents of the doll house as antiques. An inventory was prepared listing each item contained in the doll house and that, too, fails to list the items as antiques. The bill of sale describes

the property sold as—

"Lux Doll House in Miniature per inventory attached, together with the right to use the name of 'Lux' and 'Lux Memory Doll House' in connection with the advertising, display and exhibition of said property."

On April 16, the same day the bill of sale was executed, defendant sold the doll house to Miniature Collections, Inc., a corporation which defendant had formed to operate the display. The consideration for the sale by defendant to the corporation was $10,000, which was paid to defendant by a note of the corporation and stock thereof. On January 11, 1957, after commencement of trial of this action, the corporation conveyed the doll house back to defendant. It is defendant's contention that the conveyance had no effect on the claims made herein, and we shall proceed on that theory.

Defendant exhibited the doll house at the Minnesota State Fair in 1954, 1955, and 1956 and at a home show in the St. Paul Auditorium in the spring of 1956. He contends that he first learned during his operation of the doll house at the 1954 state fair that all the miniatures contained in the house were not antiques when he heard remarks to that effect by spectators. In the fall of 1955, Mrs. King, who owned the original collection, helped defendant set up the doll house and she then informed him that she had sold the collection and the house to plaintiff for $2,200 and that the contents were not antiques. In spite of this, defendant continued to show the doll house that fall and during the fair in 1956 and at the home show the same year, using substantially the same advertising as had been used by plaintiff and his wife.

Plaintiff testified that at no time did he represent the doll house and its contents to be genuine antiques. He testified that he was not asked by defendant whether they were antiques nor was he ever asked to furnish any proof that they were antiques. It is undisputed that defendant never asked plaintiff to show him his books with regard to income or attendance, either at the fair or elsewhere.

The note for the second half of the purchase price came due on September 10, 1955. Plaintiff claims that no complaint was ever made about the doll house or its contents until he demanded payment of this note and at that time defendant refused to pay, claiming that plaintiff

had misrepresented the doll house and its contents. Defendant continued to exhibit the display during the fall of 1955 and during 1956. He has never offered to return any part of it to plaintiff.

Plaintiff's wife, who originally was part owner of the doll house, died on June 6, 1955. She had endorsed the note to plaintiff. This action was brought to recover thereon, and defendant counterclaimed seeking a right to rescind and to recover the original payment which he had made. The trial court held that there was no misrepresentation and further that, if there was, defendant had waived his right to rescind by the continued retention and dominion over the doll house after discovery of the alleged fraudulent representations.

The only questions presented for review are whether the evidence sustains the court's findings that there were no misrepresentations by plaintiff relied upon by defendant that would furnish grounds for a rescission and, if there were, that defendant by his continued retention and dominion over the goods sold has waived his right to rescind.

Where an appeal to this court presents nothing but a question as to whether a finding of the trial court is sustained by the evidence, it serves no useful purpose for us to attempt to demonstrate the correctness of the finding.

"* * * Not only is such a demonstration no part of the function of an appellate court, but it serves no useful purpose." Cooper v. Hoeglund, 221 Minn. 446, 449, 22 N. W. (2d) 450, 453.[1]

Here, the crucial findings of the trial court rest almost entirely upon the credibility attached to the testimony of plaintiff or defendant. Defendant claims that exhibits K and L contained representations of plaintiff upon which he relied in purchasing the doll house and which were false. Plaintiff, on the other hand, claims that these exhibits were given to defendant only as illustrations of the type of advertising he used in order to attract customers. The trial court chose to believe plaintiff. His testimony is not so inherently improbable as to be unworthy of belief. The credibility of the witnesses was for the trial court.[2]

---

[1]See, also, Smith v. County of Ramsey, 218 Minn. 325, 16 N. W. (2d) 169; Holmes v. Conter, 212 Minn. 394, 4 N. W. (2d) 106.

[2]First Trust Co. v. McLean, 254 Minn. 75, 93 N. W. (2d) 517.

The crucial findings of the trial court are:

"14. Lux did not make any fraudulent representations to Robinson at any time to induce the sale of the doll house to Robinson. Neither did Mrs. Lux as she did not participate in any of the negotiations for the sale of the doll house to Robinson.

"15. Lux and his wife displayed the doll house at the State Fair for seven years and elsewhere throughout the country as a business venture for profit. Lux sold and Robinson purchased the doll house for display purposes, as a business venture, and not as an antique collection. * * *

"16. The portfolios containing photos and newspaper clippings regarding the doll house were delivered by Lux to Robinson to show the method Lux used (and which Robinson also did) in promoting and publicizing the doll house for obtaining paying customers, and not for any other purpose. The references in the portfolios as to the miniatures being antiques did not induce Robinson to purchase the doll house. He was interested in buying a business and not antiques."

We have carefully examined the entire record and are satisfied that the determinative findings of the trial court quoted above are amply sustained by the evidence.

In view of our decision on the above question, we need not determine whether there was a waiver of the right to rescind. The question of waiver does not arise until there has been, at one time, a right to rescind. We find no reversible error.

Affirmed.