Nancy Lea MATSON, Plaintiff-Appellant,

v.

Donald Ellsworth MATSON,
Defendant-Appellee.

Civ. No. 9031.

Supreme Court of North Dakota.

Feb. 28, 1975.

Daniel J. Chapman, Bismarck, for plaintiff-appellant on appeal.

Patrick S. O'Neil, Mandan, for defendant-appellee.

PEDERSON, Judge.

## CASE SUMMARY

This is an appeal by the plaintiff, Nancy Lea Matson, from a judgment of the district court of Morton County granting Nancy a divorce from the defendant, Donald Ellsworth Matson. The judgment awarded the care, custody and control of Michael Duane Matson and Mathew John Matson, the minor sons of the parties, to Donald. It is from this portion of the judgment awarding custody of the children that Nancy appeals.

Judgment affirmed.

## FACTS

The Matsons were married at Webster, South Dakota, on July 15, 1966, and made their home in Fargo until 1970 when they moved to the Bismarck-Mandan area. The Matsons have two sons, Michael Duane, born February 22, 1969, and Mathew John, born March 1, 1971. Donald was transferred to Bismarck by Northwestern Bell Telephone, for which he was still working at the time of the divorce.

The Matsons have a long history of marital problems. It is alleged that these problems became more intense when Donald reached the age of 21 and began to spend time in bars. The marriage was plagued by both personal and financial problems. The problems continued to increase and, in January of 1973, the Matsons separated with Donald moving out of the family home. On January 22, 1973, Nancy brought an action for divorce on the ground of irreconcilable differences. On February 23, 1973, the district court granted an order awarding custody of the minor children and temporary alimony and support of $150 per month to Nancy. In addition, Donald was to maintain the payments and rents due on the family mobile home. Although Donald had provided some financial support during January and February, he did not make any payments in March and did not make full payments in April. During this time Nancy was receiving welfare assistance. Subsequent to a hearing held on May 7, 1973, Donald was found to be in contempt of court for not fulfilling his court-ordered duties. Donald began making his payments on May 11, 1973, and continued to do so until July 6, 1973.

On July 11, 1973, the police went to the Matson home and found Michael home alone. Although the record is not completely clear on this point, it appears that Nancy may have been charged with child neglect as a result of this incident; however, there is no record of a disposition of such charge, if it was made. Later the same evening Nancy telephoned Donald to tell him that if he could do a better job of caring for the children he could come and get them. Donald then took custody of the children until August 16, 1973. During this period the children stayed with Donald's sister at Canby, Minnesota, for two weeks while Donald and his girl friend vacationed at Yellowstone Park.

Also during this period of time, creditors forced Nancy to move out of the mobile home.

After regaining custody, early in October of 1973 Nancy was hospitalized and left the children with friends. Upon realizing that Mathew was not being properly cared for, Nancy asked the Morton County Social Service supervisor for assistance. He then asked Donald to take the children but promised Nancy that they would be returned to her when she was able to care for

them. As of the time of trial the children had remained in Donald's custody.

Prior to Nancy's hospitalization, the district court had ordered that the Morton County Social Service supervisor make a home study with respect to the care, custody and control of the Matson children. This study was not made until after Nancy was released from the hospital. The home study was conducted by Michael J. Beckler, the Social Service supervisor for Morton County. After meeting with Nancy seven times and with Donald five times, Mr. Beckler suggested that the custody of the children should be, at least temporarily, awarded to Donald. Mr. Beckler's decision was based primarily on the premise that Donald could provide the most stable home atmosphere for the children. At the request of the Social Service supervisor, the Matsons were also interviewed by Dr. Myron W. Burger, a clinical psychologist. Dr. Burger also concluded that Donald was best able to care for the children.

At the request of Nancy's counsel, Miss Becky Alm, a youth counselor for the Juvenile Court, interviewed Nancy and Donald. Miss Alm interviewed each of the Matsons for less than one hour and recommended that either party could adequately care for the children.

None of the home studies or interviews resulted in recommendations specifically worded in the language that the best interests of the children would be served by the suggested custody disposition.

Nancy has a history of emotional problems. At the age of fifteen, she took an overdose of Excedrin because she could not cope with her unstable environment and home life. At about this same time she first sought psychiatric help. In the summer of 1971, while she was going to school in Wahpeton, Nancy was given antidepressants for her nervous condition. In May of 1972, Nancy suffered a nervous breakdown and was hospitalized for almost one month. After this, the Matsons received marriage counseling at the Area Social Service Cen-

ter. Nancy was again hospitalized in October of 1973.

Nancy's employment record reveals instability and inability to maintain adequate employment. Since moving to Mandan in 1970, Nancy has held several jobs. Until June of 1971 she worked as a secretary and switchboard operator at United Tribes. During the fall of 1971, she went to a nurse's training program at the Wahpeton School of Science. Upon her return from school, Nancy worked for a period of time at the Bergstrom Supply in Bismarck. Nancy has also worked as a cocktail waitress in Bismarck and Mandan. For a period of time in 1973, Nancy was employed at the Quain and Ramstad Clinic in Bismarck.

Although Donald has had financial problems throughout the course of the marriage, it appears that many of these problems were the result of expenditures by both of the Matsons. Nancy contends that Donald has a drinking problem but he has maintained continuous employment with Northwestern Bell Telephone for several years.

During the course of their marriage, the Matsons have both cultivated extra-marital relationships. The Matsons even went so far as to come to an agreement that such activity would be condoned. After Donald moved out of the family home, several men were known to have spent the night with Nancy. One of these men lived with Nancy during the summer of 1973. While it is not entirely clear in the record, it is apparent that Donald has also spent time with several other women.

## ISSUES

I. The primary issue before us is a determination of whether, in light of these facts, the finding of the district court awarding custody of the minor children to Donald was clearly erroneous.

II. Counsel for Nancy raises, through specifications of error, a question relating to admissibility of evidence.

## DECISION

■ The scope of our review in this case is limited by Rule 52(a) of the North Dakota Rules of Civil Procedure, which provides in pertinent part:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * * *Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."* [Emphasis added.]

### I.

In applying Rule 52(a), N.D.R.Civ.P., to the instant case, we must first determine if the finding complained of is a finding of fact and subject to the clearly erroneous test. In Ferguson v. Ferguson, 202 N.W.2d 760, 761 (N.D.1972), at syllabus 3, this court held:

"Findings that a party to a divorce action has committed adultery, *that the best interests of the children of the parties to a divorce action would be served by awarding custody of the children to one party as opposed to the other,* and that a particular division of property between the parties to a divorce action is equitable, are appropriately dealt with on appeal as findings of fact. *Consequently, a review of these findings is limited to a determination of whether or not they are 'clearly erroneous' within the purview of Rule 52(a), N.D.R.Civ.P."* [Emphasis added.]

Although this approach has been subjected to criticism, this court has recently reaffirmed the *Ferguson* rationale in Silseth v. Levang, 214 N.W.2d 361 (N.D.1974), and again in Jordana v. Corley, 220 N.W.2d 515 (N.D.1974). A finding of fact relating to custody of minor children is within the purview of the "clearly erroneous" rule (Rule 52(a), N.D.R.Civ.P.).

This court has repeatedly held that the welfare and best interests of minor children is the paramount consideration in determining the custody of such children in a divorce action. Silseth v. Levang, *supra;* Ferguson v. Ferguson, *supra;* Ficek v. Ficek, 186 N.W.2d 437 (N.D.1971); Noakes v. Noakes, 185 N.W.2d 486 (N.D.1971); Kucera v. Kucera, 117 N.W.2d 810 (N.D.1962).

In the case at bar the trial court, in its oral opinion, said:

"As to the custody of the children the Court finds that it is in the best interest and welfare of the children that the Defendant be given custody of both of the children of this marriage."

The trial court also set forth the following finding of fact:

"That the Court, after duly considering all of the evidence offered herein, all written reports available with respect to the parties hereto, and having considered the qualifications and attitudes of the parties for the children, the ages of the respective children, the ages of the parents, the occupations of the respective parents, the stability of the individuals and the moral appearance *and all other matters that the Court can find which bears upon the welfare of the children,* does find that the defendant is a fit and proper person to have the care, custody and control of the minor children of the parties, during their minority, or until further order of the Court, with the right of reasonable visitation by the plaintiff." [Emphasis added.]

Although Nancy's contentions are contrary, to argue that these statements are inconsistent and that the district court did not consider the welfare and best interests of the children is not persuasive.

Upon oral argument before this court, Nancy's counsel argued that the finding of fact as to child custody made by the trial court was insufficient. She contends that the finding was not sufficiently clear to establish the basis for the finding.

One of the purposes of Rule 52 is to assist the appellate court by affording it a clear understanding of the trial court's decision. Struchynski v. Decker, 194 N.W.2d 741 (N.D.1972). If Nancy had believed that the trial court's finding was insufficient, she could have moved to amend the finding pursuant to Rule 52(b), N.D.R.Civ.P. The purpose of this rule is "to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment it entered thereon." Ellendale Farmers Union Cooperative Ass'n v. Davis, 219 N.W.2d 829, 836 (N.D.1974). We believe that the trial court's finding of fact quoted above is sufficient enough to be in compliance with Rule 52(a). Although the finding is a general statement and is not a model which we would urge other courts to follow, this court can deduce therefrom those factors upon which the judgment is based. It is not necessary for us to be able to determine from the findings the factors that the trial court did not consider.

The demonstration of the correctness of a finding is not a function of an appellate court and would serve no useful purpose. Lux v. Robinson, 255 Minn. 294, 96 N.W.2d 385, 388 (1959).

The trial court is vested with a great amount of discretion in matters of custody and in determining what is in the best interests of a child, and a decision of the trial court on these matters will be interfered with only when its findings are clearly erroneous. This court must give great weight to the findings made and the inferences drawn from the evidence by the trial court, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. In re Estate of Rask, 214 N.W.2d 525 (N.D.1974). In Bellon v. Bellon, 213 N.W.2d 376 (N.D.1973), at syllabus 6,[1] this court held:

"In divorce actions, the trial court has the responsibility of finding facts and resolving conflicts in evidence, and findings of fact based on conflicting evidence will not be disturbed on appeal unless manifestly and palpably contrary to the evidence as a whole, or induced by an erroneous view of the law."

A finding of fact by a trial court is presumptively correct and will not be set aside unless "clearly erroneous." Stockmen's Ins. Agcy., Inc. v. Guarantee Res. L. Ins. Co., 217 N.W.2d 455 (N.D.1974). A finding of fact is erroneous when made without evidentiary support. Dittmer v. Nokleberg, 219 N.W.2d 201 (N.D.1974). In In re Estate of Blank, 219 N.W.2d 815, 816 (N.D.1974), at syllabus 7, we held:

"The reviewing court will hold a finding of fact of the trial court clearly erroneous only when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made."

In the light of the facts, hereinbefore set out more fully, that Donald could provide the more stable atmosphere, that he had more stable employment, and that Nancy had a history of health and emotional problems, we conclude that the finding is not clearly erroneous.

## II.

Questions are raised by counsel for Nancy in a number of specifications and, with one possible exception, are disposed of hereinbefore. Although we said in Stockmen's Ins. Agcy., Inc., *supra*, at syllabus 6: "Questions unnecessary to the decision of a case need not be, and will not be, considered", we believe that it would be helpful for us to add matters which indirectly involve a decision reached under Rule 52(a).

We have not hereinbefore commented on the question of admissibility of

1. For the benefit of those who criticize the citing of a syllabus, we state that a syllabus by the court in North Dakota is a holding of the court.

evidence. Without any necessity to discuss the specific items of evidence that were objected to, we believe that this court has spoken on this subject adequately when it said:

"We believe the trial judge acted correctly in admitting the deposition into evidence with the objections noted. In fact, we believe that the trial judge could appropriately have admitted it into evidence without qualification. We believe that a trial judge, in a nonjury case, should ordinarily admit all evidence which is not clearly inadmissible. A judge who is competent to rule upon the admissibility of evidence can distinguish in his own mind, when deliberating his ultimate decision, between evidence which is admissible and evidence which is not admissible. The introduction of allegedly inadmissible evidence in a nonjury case will rarely be reversible error, and it may often avoid a possible reversal in cases where this court, on appeal, holds that the evidence is admissible.

"We agree with the statement of the Eighth Circuit Court of Appeals in Builders Steel Co. v. Commissioner of Internal Rev., 179 F.2d 377, 379:

" 'In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. . . . On the other hand, a trial judge who, in the trial of a nonjury case, attempts to make strict rulings on the admissibility of evidence, can easily get his decision reversed by excluding evidence which is objected to, but which, on review, the appellate court believes should have been admitted.' " Schuh v. Allery, 210 N.W.2d 96, 99 (N.D.1973).

We hold that in a trial to the court without a jury it is not clearly erroneous to admit all evidence which is not clearly inadmissible.

The judgment is affirmed.

ERICKSTAD, C. J., PAULSON and SAND, JJ., and NORBERT J. MUGGLI, District Judge, concur.

The Honorable ROBERT VOGEL deeming himself disqualified did not participate; the Honorable NORBERT J. MUGGLI, Judge of the Sixth Judicial District sitting in his place.