Frances JAHNER, Executrix of the
Estate of Mathias Jahner,
Plaintiff-Appellee,

v.

Valentine JACOB, Defendant-Appellant.

No. 9088.

Supreme Court of North Dakota.

May 6, 1975.

Rehearing Denied June 24, 1975.
Certiorari Denied Oct. 6, 1975.
See 96 S.Ct. 134.

William R. Mills, Bismarck, for defendant, appellant.

Wheeler, Wolf, Wefald & Durick, Bismarck, for plaintiff, appellee; argued by Albert A. Wolf, Bismarck.

SAND, Judge.

This is an appeal by defendant Valentine Jacob from a judgment for damages in favor of the plaintiff, Estate of Mathias Jahner, rendered by the district court of Emmons County in a trial without jury for injuries sustained as a result of a civil battery by Jacob upon Jahner. Previously, a criminal action arising out of the same situation was appealed and decided by this Court in State v. Jacob, 222 N.W.2d 586 (N.D.1974).

Jacob contends that a new trial should be granted on eight grounds, which will be stated in the discussions following.

The basic, uncontested facts may be summarized as follows:

Math Jahner and Valentine Jacob, each separately owned or helped operate sepa-

rate but adjoining farms in Emmons County, were neighbors and knew each other all of their lives. On the morning of October 9, 1973, Valentine Jacob was repairing a fence on a farm. At about 9:15 in the morning Jahner drove his pickup to where Jacob was, made a U-turn, parked on the opposite side of the road, got out of the vehicle, and came over to Jacob. An altercation took place in which Jahner sustained injuries. Jahner brought this action, but passed away while it was pending, whereupon his executrix was substituted as party plaintiff. This action is not for wrongful death.

The testimony is not in harmony as to what precipitated the altercation. The testimony relating to the altercation consists primarily of the transcript of Jahner's testimony given at the preliminary hearing in State v. Jacob, the criminal case referred to above, and the testimony of Jacob given during the trial of the instant case.

The testimony of Mathias Jahner at the preliminary hearing, in condensed form is as follows:

The evening before the altercation took place, Jahner saw somebody working at the place where the altercation occurred. When he drove up there in the morning he first thought it was Ray (the son of Jacob) who was working there. He had seen people working there the night before. Jahner thought they were closing up the approach which had been cut out about three weeks before. He just drove up there to see if there was an opening to haul two or three loads of hay, because it was about to rain and drizzle. When he came there he saw it was Valentine Jacob, and not his son Ray. Jahner never had an argument with Valentine in his life. After he got out of the truck he walked over to Jacob and said, "Good morning, I thought we were going to haul our hay today." Jacob came over to him and replied, "You came at the right time." Jahner then got a beating from Jacob. Jahner did not try to hit Jacob. Jahner is 64 years of age, 5'6", and weighs about 155 pounds. Jacob hit Jahner about the face, shoulders and body with his fist. Jahner didn't think he would get a beating from Jacob by just talking and saying good morning to him. Jahner also testified, "Gosh, I just got the beating and that's all. I don't know any more where all the places were or what." Jahner, after the beating, managed to drive home, and from there he was taken to the Clinic and then later to the hospital.

The testimony of Valentine Jacob at the trial in the instant case, in a condensed form, is as follows:

When Jahner came up to him he was working on a fence; that Jahner had driven up in a truck, made a U-turn and parked on the opposite side of the road; that when Jahner came up and hit him in the body once and pushed him against the fence post, Jacob said, "That is all I help you out all them years, that is all I get from you? Then I grabbed him [Jahner]." Jacob further testified that as he grabbed Jahner he turned him around with his left hand and hit him with his right hand across the shoulder and neck while Jahner was hanging on; that after he had turned Jahner around, Jahner wasn't hitting any more, that Jacob hit Jahner three or four times with his fist, and then he (Jacob) let him loose. He further testified that while Jahner was being hit and was going down Jahner said, "Let me go and I will build the approach another place." Jacob also testified (in justification) as follows: "Well, if I hadn't hit him he [would have] hit me. He [would] beat me up. Yeah, maybe I let him loose he hit me again." Jacob testified that he was concerned over the fact that Jahner drove his pickup in the manner that he did and turned it around and parked it on the other side of the road.

Jacob pleaded self-defense in his answer to the complaint.

■ Jacob contends that the trial court used an *incorrect formula* as to what force a person may use to repel an attack. He contends, and we do not disagree, that the measure of force a person attacked may use

(in self-defense) is what he reasonably believes his safety requires, and not that amount which one would decide necessary with the benefit of 20/20 hindsight.

Jacob argues the supposition that the trial court erroneously applied the rule of law contained in the jury instruction in State v. Jacob, 222 N.W.2d 586 (N.D.1974), which this court held was error.[1] The erroneous instruction contained the following provision: ". . . if the force or violence used is more than sufficient to prevent such offense."

This court's decision in the *Jacob* case was rendered on October 10, 1974, and the instant case was tried by the court on October 3, 1974. Jacob's argument rests primarily on the fact that our decision in State v. Jacob was later in time than the trial in the instant case, and upon the fact that both cases were tried in the same district, but before different judges.

There, however, is a counter supposition having equal or greater force, namely, that the trial court had available to it the North Dakota Jury Instructions, and was aware of and knew the contents of instruction No. 321, which was formulated upon the rule of law announced by this court in McLean v. Foisie, 33 N.D. 646, 157 N.W. 840 (1916), the pertinent portion of which instruction reads as follows:

"He [defendant] must prove that no more force was used than he reasonably believed necessary to prevent an offense against his person or property."

Jacob also contends that the court erred in relying on the case of Powell v. Meiers, 54 N.D. 336, 209 N.W. 547 (1926), because it, in Jacob's contention, did not use the correct rule pertaining to reasonableness of defendant's belief of being in danger [permitting the use of corresponding force to protect against or repel the danger], but rather used the rule stating that no more force can be used than is necessary.

The trial court, in announcing its decision from the bench at the conclusion of the trial made mention of the *Powell* case in the following context:

"I think as to the answer of the defendant, where the main claim, of course, is self-defense, starting way back in North Dakota legal history with Powell v. Meiers, 209 N.W. 547, where self-defense, the burden of the plea of self-defense is upon the defendant, I do not think the defendant has sustained that burden because the Court believes that more force was used by the defendant in this action than what was necessary to defend himself"

The *Powell* case involved a situation where the defendant Meiers came to Mrs. Powell's residence for the purpose of borrowing a rifle belonging to her son. The request was refused by Mrs. Powell, whereupon abusive language was used by Meiers, calling her ugly names and casting grave imputations upon her virtue. Mrs. Powell then struck Meiers in the face with a hand towel which she had in her hand when she came out of the kitchen, whereupon the defendant struck her in the eye with a clenched fist and kicked her in the leg, causing bruises, pain and discomfort. The *Powell* case, unlike the instant case, was tried to a jury. The *Powell* jury instruction as to the reasonableness of the force which may be used in self-defense, stated as follows:

"And since the plaintiff was in the first instance the aggressor and made an assault upon the defendant, the defendant would have a right to use such force in resisting such assault and protecting himself against harm and injury therefrom as appeared to him at the time, with good faith, to be reasonably necessary."

The foregoing instruction, although a part of the record in the *Powell* case on file with this court, is not reflected in the opin-

---

1. To prevent an erroneous impression, we need to emphasize that this court did not overrule a prior rule of law of this court.

ion because this court, in *Powell,* found it unnecessary to discuss the rule of law as to what the defendant reasonably believed to be necessary to repel the force because of the lack of facts to warrant it. This court, in 209 N.W. at 549, said:

"The testimony is clearly sufficient to support a verdict by the jury that the defendant used more force than was necessary to defend himself against the attack made upon him by the plaintiff. We are not impressed that the defendant Meiers was in such grave danger of personal harm at the hands of Mrs. Powell that he was justified in hitting and kicking her with the force disclosed by the record, or at all. . . . If he did experience 'more pangs and fears than wars or women have,' the record does not suggest it."

 It necessarily follows that if the defendant proposes to justify the force used in self-defense on the basis he reasonably believed he was in great physical danger, he must present evidence which would tend to support such belief. If such evidence is not produced, the court is not required to give any serious consideration to the frame of mind of the defendant, because without such evidence the court could not draw reasonable inferences regarding such state of mind. Thus, under the factual situation in *Powell* this court had no reason to discuss the rule of self-defense, but upheld the rule of law which places the burden upon the defendant to prove the plea of self-defense.

The proper rule of law is stated in State v. Jacob, *supra,* at syllabus 1, as follows:

"An instruction on self-defense given in a criminal action should advise the jury that the force exercised in self-defense is not deemed excessive if it is no greater than that which the actor reasonably believed to be necessary to repel the offense."

 This court has stated the rule of law in a civil case, in syllabus 5 in Julson v. Loyal Order of Moose Number 822, 140 N.W.2d 39 (N.D.1966), as follows:

"Factors to consider in determining whether a person acted in self-defense and is thereby exempt from liability for injury caused to another are the reasonableness of his belief [of being] in danger and the reasonableness of his belief of the need of the amount or degree of force used."

It thus becomes apparent that the rule of law is substantially the same in both civil and criminal cases.

The rule of law is also stated in 6 Am. Jur.2d Assault and Battery § 161, page 135, as follows:

"In a civil action for assault, the defendant's belief that the plaintiff intended to do him bodily harm cannot support a plea of self-defense unless it was such a belief as a reasonable person of average prudence would have entertained under similar circumstances. It is not necessary that the danger which gave rise to the belief actually existed; it is sufficient that the person resorting to self-defense believed in the existence of such a danger, and such reasonable belief is sufficient even where it is mistaken. In forming such reasonable belief a person may act upon appearances."

At Section 162:

"It is thus seen that the right of self-defense is not limited by actualities, but by reasonableness of belief, and that a person may be justified by self-defense where he used such force as reasonably appeared to him necessary to repel the attack, although the force used by him was greater than in retrospect appears to have been actually necessary. One who uses excessive force in repelling an attack may not be precluded from asserting self-defense, but may become civilly liable as an aggressor for so much of the force used as is excessive."

And at Section 163:

"In determining whether only reasonable and necessary force was used by the

person claiming to have acted in self-defense, the relative physical strength of the attacker and the party attacked, differences in their ages or sex, are to be taken into consideration."

■ This necessarily means that the defendant must have some reasonable basis for believing himself to be in danger. It does not permit mere conjuration or imagination of being in great danger without a reasonable basis therefor, and it does not permit responding with unnecessary great or devastating force.

■ The reason for believing that he is in danger must have some reasonable basis. The question of whether defendant's belief of being in danger was reasonable is for the trier of fact to decide. It necessarily follows that the trier of fact must have some evidence upon which to make this determination.

The trial court in the instant case made the following pertinent findings of fact:

"V.

"That the defendant used excessive force to repeal an attack of the plaintiff upon him if such attack took place, and that such excessive force caused the injuries sustained by plaintiff."

Under the conclusions of law, the court stated as follows:

"IV.

"That defendant failed to sustain his burden of proof of self-defense as a justification for the assault and battery committed upon the plaintiff, in that the force used upon the plaintiff by the defendant was excessive to repel the appearance of any attack by the plaintiff upon the defendant, and that the defendant continued to strike the plaintiff about the head after he had fully subdued the plaintiff as to any attack or appearance of attack upon the defendant."

■ Findings of fact are recognized as such even though they may be denominated by their placement as conclusions of law. This court, in Ferguson v. Ferguson, 202 N.W.2d 760 (N.D.1972), said, ". . . the labels placed upon the findings by the district court are not conclusive." *See also,* Wilson v. Allstate Insurance Co., 85 S.D. 553, 186 N.W.2d 879 (1971), which in effect said that a fact found by the court, although expressed as a conclusion of law, may be treated on appeal as a finding of fact.

Jacob did not move pursuant to Rule 52(b), N.D.R.Civ.P., to amend the findings of fact or to make additional findings so as to be more specific. See Ellendale Farmers Union Cooperative Ass'n v. Davis, 219 N.W.2d 829, 836 (N.D.1974), for the purpose of the rule. Neither did he move for a new trial under Rule 59(b)(6). Under these circumstances, we review the findings as they exist, including the necessary implications to be drawn therefrom.

The facts recited in paragraph V of the findings of fact and in the mixed finding of fact and conclusions of law as found in paragraph IV of the conclusions of law set out earlier above herein, constitute a finding by the trial court that Jacob used greater force than he could have reasonably believed to be necessary to defend himself from any real or apparent danger. These findings support the proposition that the court was aware of the proper rule of law and that the court applied the appropriate rule of law pertaining to reasonableness of the force used to repel any real or apparent danger.

■ The facts as found by the trial court will be upheld on appeal unless they are clearly erroneous under Rule 52(a), N.D.R.Civ.P.

Jacob has failed to call to our attention, and we, after a careful examination of the record, are unable to find any evidence which would have legally required the trial court to give greater special consideration than it did in its findings of fact to the

proposition whether Jacob had a reasonable fear, real or apparent, of being in such danger as to justify him in using the great force to defend himself against the apparent danger or to repel it.

To accept the argument of Jacob would require us to place a strained construction and interpretation upon the findings of fact and conclusions of law, and would also require us to presume that error was committed. On review, this court does not presume error was committed. The court on appeal will recognize on its own only obvious or plain error.

From the examination of the record we cannot conclude that the trial court applied an incorrect rule of law (formula) as to the force a person may use to repel an attack. To the contrary, we conclude that the court did apply the correct rule of law.

By reaching the conclusion that the findings of fact and conclusions of law in this instance are adequate, we are not de-emphasizing the value or significance of findings of fact or conclusions with specificity as to each issue involved.

The facts as found by the trial court (including the facts found in the mixed finding of fact and conclusions of law erroneously denominated as "conclusions of law") support the conclusion of law that Jacob failed to sustain the burden of proof required of him by law, and that he used excessive force under the circumstances.

Having disposed of the foregoing issue, we now move to Jacob's contention that the trial court erred in admitting into evidence the opinions of the several doctors contained in Jahner's voluminous hospital records, which hospital records were admitted into evidence. Jacob contends that the admission of these doctors' opinions was erroneous and prejudicial and that one of the reasons prejudice appertained was that the opinions of the doctors were before the court without the benefit of cross-examination to explain, modify or discredit them.

Section 31–08–01, N.D.C.C., and its companion provision, Section 31–08–01.1, N.D.C.C. [both provisions being relevant portions of the North Dakota Business Records Act] provide for the admission of business records if they meet the requirements set forth in the Act. The term "business" as used in the foregoing section, pursuant to the provisions of the Act, includes every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not. This clearly does not exclude hospital records.

This court, in Endicott Johnson Corporation v. Golde, 190 N.W.2d 752, 756–757 (N.D.1971), said:

"The purpose of the enactment of § 31–08–01, N.D.C.C., was to enlarge the operation of the business records exception to the hearsay evidence rule and § 31–08–01 should be liberally construed to that end. J. R. Watkins Company v. Vangen, 116 N.W.2d 641, ¶ 8 of syllabus (N.D.1962). See also Interstate Collection Agency, Inc. v. Kuntz, 181 N.W.2d 234, 240–241 (N.D.1970)."

In 32 C.J.S. Evidence § 682(1), page 895, is found the following:

". . . the purpose of these statutes [Business Records Act] was to broaden the scope of admissibility of records made in the regular course of business to facilitate the admission of records which experience has shown to be quite trustworthy, to make it unnecessary to call as witnesses the parties who made the business entries, or who participated in doing the work reported, and to bring the realities of business and professional practice into the court room in usable form."

In addition to this, particularly with reference to hospital records, Wigmore on Evidence (3d ed.) Vol. 6, § 1707, page 36, makes the following observations:

". . . They [hospital records] should be admissible, either on identification of the original by the keeper, or on offer of a certified or sworn copy. There is a

Necessity (*ante*, § 1421); the calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a Circumstantial Guarantee of Trustworthiness (*ante*, § 1422); for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action . . ."

These authorities clearly establish that hospital records are admissible.

■■■ While there is ample authority for the admissibility of hospital records generally under the Business Records Act, or similar Acts, the individual entries, however, are subject to scrutiny and may be excluded or eliminated from such records on the basis that these entries are otherwise not admissible. See 40 Am.Jur.2d Hospitals and Asylums §§ 442, 443, pages 882 to 886. Self-serving statements in a hospital record, if offered to establish how the injury occurred or to establish liability, are not admissible unless the statement is relevant and helpful to or serves as an aid in the diagnosis and treatment of the patient's injury. See 32 C.J.S. Evidence § 728, pages 1038 and 1039.

■■■ Nevertheless, in a non-jury case, as in the instant case, the trial judge who is entrusted by law and deemed qualified to rule on admissibility of the record or individual entries thereon, is capable of recognizing those entries which are improper evidence, particularly if the matter has been objected to and reasons given to the court why it should not be admitted or considered.

Specifically as to Exhibit 1A, records for Jahner's first hospitalization, Jacob stated he had no objection to its admission, but he did object to Exhibit 1B (records of the second hospitalization) on the basis that no showing had been made tying together the altercation and the second hospitalization.

The connection between the second hospitalization and the injuries attendant upon the altercation was later established through testimony from Dr. Fortman, Jahner's attending physician.

Jacob had the opportunity to call attention to certain matters in these exhibits and object to the consideration of those items. Jacob also had the opportunity to call as witnesses those doctors who had knowledge with reference to the medical opinions contained in these records for direct or cross-examination.

■■■ This court, in 210 N.W.2d 96 (N.D. 1973), Schuh v. Allery, on page 100, quoted approvingly from Builders Steel Co. v. Commissioner of Internal Revenue, 8 Cir., 179 F.2d 377, 379, as follows:

" 'In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. . . . On the other hand, a trial judge who, in the trial of a nonjury case, attempts to make strict rulings on the admissibility of evidence, can easily get his decision reversed by excluding evidence which is objected to, but which, on review, the appellate court believes should have been admitted.' "

This statement was reaffirmed in Signal Drilling Company, Inc. v. Liberty Petroleum Company, 226 N.W.2d 148 (N.D.1975), and in Matson v. Matson, 226 N.W.2d 659 (N.D.1975).

The record discloses that the material Jacob considered objectionable in the hospital records was questioned by a motion to strike made by Jacob at the trial, and Dr. Fortman, one of the persons responsible for maintaining the records, was examined. The trial court was thus made aware of the material Jacob considered inadmissible. However, we are impressed with the statement made by Justice Vogel in Schuh v. Allery, *supra*, 210 N.W.2d at 99:

"We believe that a trial judge, in a nonjury case, should ordinarily admit all evidence which is not clearly inadmissible. A judge who is competent to rule upon the admissibility of evidence can distinguish in his own mind, when deliberating his ultimate decision, between evidence which is admissible and evidence which is not admissible."

The record does not indicate that the trial court relied upon or had to rely upon inadmissible evidence for its findings of fact and conclusions of law.

We are also mindful of Rule 61 of the North Dakota Rules of Civil Procedure, which provides, in part, as follows:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."

We do not believe there was prejudicial error, but even if, on a hypertechnical basis, there was error, in the admission of these records, it would be harmless error in this instance.

For the foregoing reasons, we conclude that it was not prejudicial error to admit the hospital records.

Jacob contends, as a further basis for reversal of the trial court's decision, that the statements made by Jahner to the various physicians who did not testify (and to Dr. Fortman, who did) should not have been admitted into evidence. This issue has already been decided by us adversely to Jacob on the rationale we previously applied in arriving at our determination that it was not prejudicial error for the trial court to admit into evidence the hospital records (with the physicians' opinions complained of therein) which applies with equal validity to the trial court's admission into evidence of Jahner's statements as contained in those same hospital records along with the testimony of Dr. Fortman. Here, as in the former instance, the objectionable entries in the hospital records and the objectionable portion of Dr. Fortman's testimony were called to the attention of the trial court. As we have said before, this case was tried to the court without a jury, and the precautions necessitated to prevent the perusal of possibly inadmissible evidence by a jury did not appertain.

Jacob also contends that the transcript of Jahner's testimony from the preliminary hearing in the criminal case of State v. Jacob, *supra*, should not have been admitted into evidence. At the trial, Jacob moved to have Jahner's testimony stricken from the record.

This court in State v. Jacob, *supra*, the criminal case which arose out of the same altercation, resolved the question of whether or not the transcript of Jahner's testimony at the preliminary hearing was admissible in evidence in a criminal proceeding, as follows:

"The key to the admissibility of former testimony of a witness is the unavailability of that witness at the subsequent trial. California v. Green, Harlan, J., *concurring*, 399 U.S. 149, 172, 90 S.Ct.1930, 26 L.Ed.2d 489 (1970); *cf.* Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

"We have held that where a witness is unavailable for trial, his testimony at a former trial of the same issue is admissible where there was, at the first trial, adequate opportunity for cross-examination. State v. McCarty, 49 N.D. 912, 194 N.W. 335 (1923). We think that the safeguards present at the preliminary hearing were adequate. The complainant was unavailable, having died prior to the trial. At the preliminary hearing the defendant had an opportunity to cross-examine the complainant and, in fact, did conduct a lengthy examination of the complainant. If the cross-examination was not as penetrating as it might have been, it was only because counsel for the defendant chose not to make it so. The judge who presided at the preliminary hearing is not alleged to have curtailed the cross-examination in any way."

The same considerations apply to the present case, and we therefore conclude that the admission of the transcript of the testimony given by Jahner at the preliminary hearing does not constitute error.

Jacob next contends that there is insufficient admissible evidence to support a conclusion that the defendant used more force than he believed was required, or to support the conclusion that the damages were caused by the assault and battery.

■ Jacob did not move for a new trial on grounds of insufficiency of evidence, as permitted under Rule 59(b)(6), N.D.R.Civ.P. We must therefore review the findings as they exist. This court, in Trinity Builders, Inc. v. Schaff, 199 N.W.2d 914 (N.D.1972), in substance said that an allegation of insufficiency of evidence to sustain the decision is not reviewable de novo in this court. Our review is limited to the determination of whether or not the findings of fact are clearly erroneous under the provisions of Rule 52(a), N.D.R.Civ.P.

■ This court in In re Elmer's Estate, 210 N.W.2d 815 (N.D.1973), said, pursuant to Rule 52(a) a finding is clearly erroneous

only when, although there is some evidence to support it, a reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. In reviewing the findings, this court should also give due regard to the opportunity of the trial court to judge the credibility of witnesses. Mittelstadt v. Bender, 210 N.W.2d 89 (N.D.1973).

■ Mistake or error is never presumed and appellant has the burden of showing that error was prejudicial. City of Minot v. Fisher, 212 N.W.2d 837 (N.D.1973), and Schollmeyer v. Saxowsky, 211 N.W.2d 377 (N.D.1973).

■ The admissibility of evidence and testimony has been discussed earlier herein and need not be repeated here. The conclusions reached earlier have application to this subject matter. The findings of fact by the trial court are supported by substantial evidence, particularly the testimony of Jahner given at the preliminary examination. The trial court could have relied upon the testimony of Dr. Fortman, which clearly establishes that Jahner sustained injuries and that the injuries were of the nature and kind which could result from the "beating" Jahner received. The testimony of Jahner in the transcript of his testimony at . the preliminary examination establishes that he received a beating. Dr. Fortman's testimony also establishes that both the first and second hospitalizations were not the result of pre-existing conditions independent of those precipitated by the altercation. There is sufficient evidence to support the findings of the trial court that the hospitalization and medical expenses were incurred as a result of the altercation of October 9, 1973. While detailed specific findings of fact are of great significance and value, and in some instances are necessary, the trial court in this case was not required to detail each particular item in the findings and relate it to the specific individual action of the altercation. The medical expenses (special damages) allowed

by the court are supported by substantial evidence.

In reviewing the evidence of the entire record we are not left with a definite and firm conviction that a mistake has been made, but rather conclude that the findings of fact by the trial court are supported by substantial evidence and are not clearly erroneous.

Jacob also contends that damages were improperly allowed to hire a replacement for the son who had taken over the farm from Jahner and then later went to college. There is evidence which supports the damages allowed for the man hired to do the work of the son who went to college. The testimony establishes that Jahner would have performed the services, but because of the injuries sustained the hired help had to be obtained. The amount of $725.00 allowed by the court for the hired man is supported by the evidence. The mere fact that a portion was paid by check and a portion in cash does not in itself discredit the direct testimony.

Other contentions raised by Jacob are either deemed abandoned or are not deserving of further special consideration.

Jacob also raises the question whether the Jahner estate has enriched itself by claiming hospital expenses or bills which were paid by Medicare. The record indicates that some hospital bills and medical bills were paid by the Medicare program. This question was not argued, nor did Jacob's brief explain the processes which may be involved. We, however, must assume that Medicare, not a party to this action, will take appropriate steps or procedures to make any claim, if it is appropriate or necessary.

The judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.