Murry W. WARNER and Alice Warner, Plaintiffs/Appellants,

v.

Kenneth J. JOHNSON and Grace E. Johnson, Defendants/Appellees.

Civ. No. 8860.

Supreme Court of North Dakota.

Dec. 5, 1973.

Pringle & Herigstad, Minot, for plaintiffs/appellants.

Funke & Eaton, Minot, for defendants/appellees.

KNUDSON, Judge.

This is an appeal from a judgment dismissing the complaint in an action brought by the majority stockholder of a close corporation to foreclose a security interest in the minority stock interest.

In 1953, plaintiffs Murry W. Warner and his wife, Alice Warner, organized Warner Construction Company, a corporation. They were the only stockholders of its 300 authorized and issued shares. The defendant, Kenneth Johnson, was hired by the Company as its general manager in 1959. For convenience, the plaintiff and defendant will hereinafter be referred to in the singular.

In March of 1969, plaintiff and defendant entered into an agreement whereby plaintiff agreed to sell, and defendant agreed to purchase, a minority interest in the company, consisting of 147 shares of stock, for $44,100. The price of $300 per share was in excess of the book value of the shares of $241 per share. The sale was made pursuant to a letter of agreement, set forth in its entirety, as follows:

Law Offices

McGEE, VAN SICKLE, HANKLA, BACKES & WHEELER
Gate City Building
P. O. Box 998
Minot, North Dakota 58701

March 21, 1969

Mr. Kenneth J. Johnson
1000 Warner Plaza
Minot, North Dakota 58701

Dear Ken:

This letter will evidence that I have today offered to sell you 147 shares of stock of Warner Construction Company for $44,100.00. When the sale is completed, we will proceed to change the name of Warner Construction Company to Warner-Johnson Company.

Further, I agree to guarantee your note at a bank of my approval for the purchase price of the stock, provided that you shall pledge your stock to that bank and that upon my being required to honor my guarantee, the stock so placed is returned to me.

Yours truly,

S/ MURRY W. WARNER

Murry W. Warner

I accept this offer.

Dated this 24 day of March, 1969

S/ KENNETH J. JOHNSON
Kenneth J. Johnson

The principal issue in this lawsuit is the legal effect of the letter, more particularly the second paragraph.

Pursuant to the agreement, on June 11, 1969, the defendant and his wife executed a promissory note payable to the order of the Union National Bank of Minot [hereinafter Bank] for the amount of the purchase price of $44,100.00, and as security for the note the defendant delivered to the Bank (1) a term loan agreement dated June 11, 1969, consisting of a security agreement granting the Bank a security interest in 147 shares of stock in Warner-Johnson Co.; (2) a stock certificate for 147 shares of Warner Construction Company registered in defendant's name; and (3) a stock power "assignment separate from certificate" executed in blank by defendant.

The defendant was elected to the board of directors after he purchased the stock and was named vice president and general manager. The company's name was changed to Warner-Johnson Company.

On February 28, 1970, the plaintiff executed a Guaranty to the Bank guaranteeing payment of the promissory note given by the defendant.

Between December 12, 1969, and July 8, 1970, the defendant paid $3,540.91 in interest and $4,000.00 on the principal due on the note. He made no further payments. The defendant ceased his employment with the Company in July or August of 1971.

On September 17, 1971, the Bank notified the plaintiff of the default and demanded payment pursuant to plaintiff's guarantee. On October 29 the plaintiff paid the $40,000 remaining on the principal and $3,868.45 accrued interest on the note. On November 1 the Bank assigned the promissory note, security agreement, and stock certificate to the plaintiff.

■ Plaintiff argues that the findings signed by the trial court were the product of defendant's attorney and that they "covered items which were not presented in the trial court's comments" and are "sketchy." He argues, in effect, that the findings of fact in the record are not those of the court, but rather those of the prevailing party, and as such, are not entitled to the weight which this Court must ordinarily grant to a trial court's findings under Rule 52(a), North Dakota Rules of Civil Procedure.

In pertinent part, our Rule 52(a) provides:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment . . . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

Rule 52(a), N.D.R.Civ.P., is based upon Federal Rule of Civil Procedure 52(a), and the language pertinent to this appeal does not vary significantly from the language of the federal rule.

In 9 Wright & Miller, Federal Practice and Procedure: Civil, § 2571, pages 679, 680, the following explanation of the purpose behind the federal rule is found:

One purpose of requiring findings of fact is to aid the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court. Another purpose is to make definite just what is decided by the case in order to apply the doctrines of estoppel and res judicata in future cases. Finally, and possibly most important, the requirements that findings of fact be made is intended to evoke care on the part of the trial judge in ascertaining the facts.

Plaintiff cites several federal cases expressing criticism of the practice whereby a trial court announces a decision and orders counsel for the prevailing party to prepare findings, the trial court then adopting them verbatim. Roberts v. Ross, 344 F.2d 747 (3d Cir. 1965); Louis Dreyfus & Cie. v. Panama Canal Company, 298 F.2d 733, 738 (5th Cir. 1962); Mesle v. Kea Steamship Corporation, 260 F.2d 747 (3d Cir. 1958).

In Louis Dreyfus & Cie. v. Panama Canal Company, *supra,* an admiralty case, the libelant urged "that the district court decision is not entitled to the full credit usually extended to the findings made by the trier of facts since the trial judge uncritically adopted, virtually verbatim, the proposed findings submitted by counsel for the Panama Canal Company. The respondent submitted seventeen findings of fact. The trial judge incorporated sixteen into his findings verbatim, omitting one incidental finding not related to any disputed question." The Fifth Circuit Court of Appeals said, at 298 F.2d 737:

We disapprove of the practice of a trial judge's uncritically accepting proposed findings, but this unfortunate practice

does not erase the "clearly erroneous" rule.

The court noted that the language of the admiralty rule under consideration, Admiralty Rule 46½, 28 U.S.C.A., contains "the exact language used in Rule 52(a) of the Federal Rules of Civil Procedure . . .. The standard governing appellate review is also the same: it may set aside findings of fact only if 'clearly erroneous'."

The court in that case stated, at page 738, that, "In analyzing the significance that should be attached to the adoption by the trial judge of findings drafted by one of the litigants, common sense may be a better guide than ideal decision making." It continued:

Although the standard of review is the same, however, there is and should be a certain leeway in applying the standard to varying cases. When the findings have been drafted by the trial judge himself, they carry a certain badge of personal analysis and determination that may dissuade an appellate court from reversing in a doubtful case. When that badge is missing, the appellate court can feel slightly more confident in concluding that important evidence has been overlooked or inadequately considered— if the evidence supporting the decision is of a doubtful nature. The significance of these considerations with regard to any particular finding depends on the nature of the issue and the relevant evidence. If the decision depends directly upon two or three issues that are clearly drawn, it will be clear that the judge must have focused on those questions before reaching his decision, and therefore it can readily be assumed that the findings accurately reflect his convictions. By contrast, if the questions of fact are complicated and numerous, not all of them being crucial to a determination of the case as a whole, there is greater cause for suspicion that the judge may have allowed certain of the proposed findings to slide under the fence, despite

his doubts as to the questions, because they were not necessary to the decision.

The Court of Appeals reviewed the evidence and affirmed the decision of the trial court.

In Roberts v. Ross, *supra*, the trial judge had followed the practice of announcing his decision "substantially in the form of a general verdict," and then directing counsel for the prevailing party to prepare findings of fact, conclusions of law, and a form of judgment. The trial judge's order was not "accompanied by an opinion setting out, even summarily, the facts and legal conclusions which had brought him to his decision." The Court of Appeals continued:

Obviously the judge must have dealt with the questions of fact and law involved in the case in the course of the reasoning by which he has reached his ultimate conclusion, even though his reasoning has not been articulated and put on paper. But counsel who is called upon to articulate and write out the findings and conclusions must do so without any knowledge of the fact findings and reasoning process through which the judge has actually gone in reaching his decision.

The Court of Appeals further found that "the trial judge's conclusion is . . . . so inadequate as to afford this court no indication of the legal standard under which the evidence was considered." The Court of Appeals continued:

We strongly disapprove this practice. For it not only imposes a well-nigh impossible task upon counsel but also flies in the face of the spirit and purpose, if not the letter, of Rule 52(a). The purpose of that rule is to require the trial judge to formulate and articulate his findings of fact and conclusions of law in the course of his consideration and determination of the case and as a part of his decision making process, so that he himself may be satisfied that he has

dealt fully and properly with all the issues in the case before he decides it and so that the parties involved and this court on appeal may be fully informed as to the bases of his decision when it is made. Findings and conclusions prepared ex post facto by counsel, even though signed by the judge, do not serve adequately the function contemplated by the rule. At most they provide the judge with an opportunity to reconsider the bases of his original decision but without affording the parties any information as to what those bases were or which of them are being reconsidered. At worst they are likely to convict the judge of error because, as here, they are inadequate to support his decision or because, as we have observed in other cases, they are loaded down with argumentative over-detailed partisan matter much of which is likely to be of doubtful validity or even wholly without support in the record.

And concluded:

Since, as we have seen the findings prepared by counsel, and which the trial judge adopted without change, are inadequate in that findings necessary to support the judgment are lacking, the judgment must be vacated and the cause remanded . . . .

In Mesle v. Kea Steamship Company, *supra*, the Third Circuit Court of Appeals again disapproved of the practice whereby the findings of fact and conclusions of law proposed by the prevailing party are adopted verbatim by the court. But the Circuit Court there reviewed the evidence and affirmed the trial court's judgment.

In the instant case, an oral opinion accompanied the decision from the bench. This opinion covers some six pages in the record and considers the evidence presented during the course of the trial.

Plaintiff argues that the opinion was issued only ten minutes after the close of evidence and arguments by both counsel.

This, he argues, indicates a lack of careful consideration.

However, the trial took two days, during which time the trial court had occasion to see and observe the witnesses and hear the entire case. The plaintiff and the defendant testified on July 11, 1972, and the attorney who prepared the letter agreement testified on July 13, to which date the trial was adjourned. It was at the conclusion of this testimony that the arguments were heard and the oral memorandum decision was announced. The trial court had two days in which to consider the evidence and arrive at its decision.

The findings of fact signed by the trial court are substantially the same as those found in the trial court's oral opinion, and are entitled to the weight to be given by this court by Rule 52(a), N.D.R.Civ.P., and will not be overturned unless clearly erroneous. We have compared the findings of fact prepared and submitted by the attorney for the defendant and find that the findings of fact are sufficiently similar to the findings contained in the oral opinion to indicate that the trial court adequately and carefully considered the findings of fact in adopting the findings of fact as its own.

The trial court found the meaning of the terms contained in the letter concerning the plaintiff's guarantee not entirely clear —the defendant understanding that if he defaulted on the payment of the note the plaintiff would accept the return of the stock without any further claim against the defendant; and the plaintiff claiming that he would have the same rights as the Bank. The trial court, upon considering the evidence adduced, found that the parties intended "by their agreement, that in the event of default by the defendant, plaintiff would accept return of the stock in full satisfaction of his claim against defendant."

The trial court found from the evidence and circumstances that the defendant was a minority stockholder in a close corpora-

tion; that the value of the stock upon execution sale would be negligible to anyone but plaintiff or his wife, the majority stockholders; that the purchase price was substantially in excess of the stock's book value; that the plaintiff seller, as the employer, as the majority stockholder, and as the lender of credit, enjoyed a superior bargaining position; that the attorney who prepared the letter agreement was the long-time counsel for the plaintiff and the corporation; and that after the plaintiff had honored his guarantee he no longer recognized the defendant as a stockholder or director.

The findings of fact prepared and submitted by the attorney for the defendant and signed by the court are as follows:

### I.

That from approximately 1959, to July of 1971, the defendant, Kenneth J. Johnson, was an employee of the Warner Construction Company, a corporation, later known as Warner-Johnson Company, and for the greater part of said time acted as its general manager.

### II.

That said corporation had issued common stock of 300 shares, of which, until on or about June of 1969, the plaintiffs were the only owners. That the book value of said stock on or about June of 1969, was approximately $241.00 per share.

### III.

That on or about March 21, 1969, as a result of prior negotiations between the plaintiff, Murry W. Warner, and the defendant, Kenneth J. Johnson, a letter offering the sale of 147 shares of said stock to defendant, Kenneth J. Johnson, was prepared by an attorney, which letter stated the price to be $44,100.00 or $300.00 per share, and which letter was prepared in behalf of the plaintiff, Murry W. Warner.

### IV.

That said letter also contained the following language concerning the terms upon which Murry W. Warner would guarantee a bank loan used to finance the price of the stock:

"Further, I agree to guarantee your note at a bank of my approval for the purchase price of the stock, provided that you shall pledge your stock to that bank and that upon my being required to honor my guarantee, the stock so placed is returned to me."

### V.

That said offer was accepted by defendant on or about the 24 day of March, 1969, and the sale consummated in accordance therewith. That from that date until November, of 1971, the defendant Kenneth J. Johnson paid $4,000.00 on the principal of said bank note plus interest. That in July or August of 1971, the defendant's employment with said corporation was terminated and he defaulted upon said bank note. That on or about November 1, of 1971, the plaintiff, Murry W. Warner, upon the demand of said bank, paid said note and received the stock certificate from the bank together with the blank endorsement thereof by separate assignment, and ever since then has continued to hold said stock in his possession.

### VI.

That the meaning of the terms contained in said letter agreement concerning Murry W. Warner's guarantee is not entirely clear—defendant understanding that if he defaulted on the note the plaintiff would accept the return of stock without further claim against him and the plaintiff claiming that he would

have the same rights against Mr. Johnson upon default as the bank—and the Court has had to examine the circumstances surrounding said transaction.

## VII.

That under all the circumstances, including the facts hereby found that a minority stock interest was involved, that the price paid was substantially in excess of the stock's book value, that the seller as employer and lender of credit enjoyed a superior bargaining position, that the attorney preparing the same was a long-time counsel for plaintiff and his corporation, and that plaintiff did not recognize defendant as a stockholder or member of the Board of Directors after he paid the said bank note and received the stock certificate and assignment thereof endorsed by defendant—that under all these facts the Court finds that the parties intended and the letter agreement of March 21, 1969, meant that in the event Kenneth J. Johnson defaulted on the note the plaintiff would accept the return of the stock and make no further claim against said defendant.

## VIII.

That plaintiff's counterclaim is for wages and other compensation alleged to be owing him by the Warner-Johnson Corporation which is not a party to this action.

## IX.

The plaintiff's first cause of action was withdrawn upon the commencement of the trial and no proof introduced in support thereof.

■ This court will not reverse and remand a case where the trial court first announces orally its findings and then signs findings prepared by counsel, where the findings are not clearly erroneous.

■ The evidence is undisputed that the price per share paid by defendant was $300 and that the book value for the same share was $241; that plaintiff requested the attorney to draw the letter; that the date of acceptance was March 24, 1969; and that the attorney drawing the letter of agreement had represented the plaintiff and his corporation for a number of years, although the defendant did admit he had agreed that the attorney was to represent both parties in this transaction.

No other documents were made touching on the sale of the stock, the loan from the bank for the purchase price, and the terms of the guarantee, except the issuance of the stock to Johnson, the note to the bank, the security agreement and the pledge of the stock by the assignment thereof to the bank. No discussions were had about the legal consequences in the event the defendant failed to pay the note to the bank. The defendant claims that his understanding was that if he should default and the plaintiff was required to make good on his guarantee to the bank, the return of the stock to the plaintiff would be accepted in full satisfaction of the loan.

Plaintiff disputes whether or not he recognized defendant as a stockholder or member of the board of directors after the bank note was paid, and the stock certificate and assignment of voting rights executed in blank were returned to him. The exhibits show there were four board of directors' meetings between the time defendant's employment ceased and May 26, 1972. Defendant received no notice of those meetings and did not attend. Neither was he notified nor did he attend several informal meetings of the stockholders held during that time. The same exhibits also stated, "Those present were Murry W. Warner [and] Alice Warner—being *the majority* of the directors and a quorum." [Em-

phasis supplied.] This, plaintiff argues, shows that defendant was still considered a stockholder and director of the corporation. We find, however, there is substantial evidence to support the finding adopted by the court.

Applying Rule 52(a) of our Rules of Civil Procedure, notwithstanding that the trial court adopted the proposed findings of counsel verbatim, and concluding that the trial court's written findings of fact are not clearly erroneous, we sustain the trial court's findings of fact and the judgment based thereon.

The judgment is affirmed.

ERICKSTAD, C. J., and TEIGEN, PAULSON and VOGEL, JJ., concur.

VOGEL, J., was not a member of this Court at the time of submission of this appeal; he participated on the briefs filed in this case.