James **FORTMAN**, Plaintiff and Appellee,

v.

Wayne **MANTHEY** and Thomas Manthey, Defendants and Appellants.

Civ. No. 9241.

Supreme Court of North Dakota.

Dec. 23, 1976.

Dewel E. Viker, Jr., Hillsboro, for plaintiff and appellee.

George E. Sorlie and Bradley W. Berg (argued), Hillsboro, for defendants and appellants.

VOGEL, Justice.

This is an action on behalf of grandparents against grandsons. The question is whether payments made by the grandsons to the grandparents were for rent of land or payments on the purchase price. We affirm the judgment in favor of the grandparents, holding that the payments were rent. The grandparents are therefore entitled to possession, without the necessity of canceling a land contract which is claimed by the grandsons to exist.

The grandparents entered into an escrow agreement providing for the sale and conveyance by deed of approximately 160 acres of real estate to the grandsons upon their payment of the consideration of $34,000, to be obtained through a loan from the Farmers Home Administration. The escrow agreement and a deed were deposited with a bank in accordance with the agreement. The grandsons entered into possession but did not pay the $34,000. Instead, they

made payments of $1,000 in the spring of 1973, $1,000 in the fall of 1973, $500 in the spring of 1974, and $1,500 in the fall of 1974. They farmed the land in 1973, 1974, and 1975. No payment was made in the spring of 1975, and an action in ejectment was instituted in county justice court after a notice to quit was served on June 3, 1975. The county justice court held that the grandsons were not entitled to possession and ordered them evicted.

A temporary restraining order was issued by the district court after the filing of the complaint in the action now appealed, and the case was heard on the merits on March 8, 1976. The district court held that the grandsons were not entitled to title or possession.

The plaintiff, who holds title in trust for the benefit of the grandparents, is a son of the grandparents and an uncle of the grandsons.

█ The action in justice court apparently was based upon the theory that the possession of the grandsons was a tenancy at will, subject to termination upon three days' notice under Section 47–17–04, N.D. C.C. Since there was no appeal to the district court, we accept the decision of the justice court as determinative of the right of the grandparents to eject the grandsons as tenants. Justice courts have no authority to try questions of title to real estate. Sec. 33–01–05, N.D.C.C. The district court action is based upon the grandsons' claim of a real-property interest under deed and escrow agreement, allegedly modified by parol.

Additional facts of possible relevancy to the issues include these: The land previously had been rented to others for approximately $2,000 annual cash rent, with the grandparents paying the taxes. During the time when the grandsons farmed the land, they paid the taxes for 1973, but the grandmother paid the taxes for 1974. The grandsons did not offer to reimburse her, even after they learned that she had paid the taxes.

The grandsons paid no sums to the grandparents in 1975 and made no effort to do so until June, when the action in justice court was started. Prior spring payments had been made in April.

The parties are in disagreement as to what the payments were for. The canceled checks show notations "Payment on farmland." The grandmother testified, somewhat vaguely, to the effect that she accepted the payments as rent because the boys could not pay any more. The grandfather was mentally incompetent to testify and did not do so. The grandmother also said that she had to take the first $1,000 payment in order to get along for the summer.

█ Two thousand dollars would be only 5.88 percent interest on the principal balance of $34,000 provided for in the escrow agreement and deed. We take judicial notice that the usual interest rate in North Dakota during the period in question in arm's-length contracts for the sale of real estate was considerably higher. We are also aware, of course, that the parties before us are related and might agree to a lower interest rate than if they were strangers.

It is undisputed that the grandsons made no payments whatever to the bank, and that the escrow agreement called for a $34,000 payment to the bank. Such payments as they made were made directly to the grandparents. It is also undisputed that they never tendered a $34,000 payment to anyone. They applied to the Farmers Home Administration for a loan, but were turned down because there were no buildings on the land. They then applied to the Federal Land Bank, and say they were promised a loan of $25,000. (However, no such statement is made in answers to interrogatories dated in September of 1975, which state only that an application was made.) They assert that they could have obtained the other $9,000 from a bank by mortgaging personal property, but they admit that they never did so. They asserted several times, at the time of trial, that they could then obtain funds and pay the full $34,000 within five days. We take judicial

notice that the value of farm real estate in eastern North Dakota increased rapidly between the spring of 1973 and the time of trial.

■ There is a fact dispute as to whether the payments made, totaling $4,000, represented rental or some sort of installment payments on the land. It is to be noted that the escrow agreement did not provide for a contract for deed or a note and mortgage with installment payments, but provided only for a deed and a consideration of $34,000. The terms of the alleged parol agreement for installment payments on the land are nowhere specified. No figure as to interest is given, no schedule of payments is specified, and it is to be noted that the payments made were irregular in amount.

The district judge made a finding that the grandsons "have not tendered the purchase price within a reasonable time, nor prior to the date of their complaint" and conclusions of law that the escrow agreement "was not performed within a reasonable time" and that the possession of the grandsons was "an oral leasehold agreement between the parties and that payments . . . were considered as rent by all parties to this action"; and ordered that the escrow agreement be declared null and void, and that all documents deposited in escrow be returned to the plaintiff. It was further adjudged that the plaintiff was the owner of the real estate.

The above finding of fact and the conclusions of law (which we treat as findings of fact) are supported by substantial evidence in the record. We find no error, and apply Rule 52(a), N.D.R.Civ.P., since the findings are not clearly erroneous.

■ Even though no date of performance was specified, the purchasers are required to perform within a reasonable time. Sec. 9–07–22, N.D.C.C.; *Mott Equity Elevator v. Svihovec*, 236 N.W.2d 900 (N.D.1975). The district court found that the delay [of three years] in making payment was not reasonable, and that the escrow agreement was abandoned in this case.

The grandsons assert that the grandparents are estopped to deny that the payments made were payments on the purchase price. In support of this argument they point to their testimony as to the purpose of the payments, and to some of the contradictory answers of their grandmother. On the other hand, however, there is also substantial evidence that the payments made were made as rent.

Support for the latter position is evident in some of the testimony of the grandmother and in the total lack of proof of the terms of the alleged modification of the escrow agreement. For example, no interest rate was specified and no schedule of payments was set forth, either orally or in writing. The court could also consider the fact that the amounts paid coincide almost exactly with the rentals paid previously by others.

■ While the version of the facts advocated by the grandsons would support a determination of an estoppel under our case law [*Farmers Cooperative Assn. of Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D.1976)], the facts as found by the trial court do not support such a determination. The trial court found that the payments were made as rent and that both parties so understood them. Therefore, no finding of estoppel to deny that the payments were made as part of the purchase price could stand. We hold that the findings of the trial court were supported by substantial evidence, were not clearly erroneous, and therefore must be affirmed. Rule 52(a), N.D.R.Civ.P.

The only other issue presented by the appellants is "Whether, as a matter of law, the purchasers were entitled to a reasonable period to redeem their interest in the land." Since we find that there was no contract for purchase of the land, but instead the escrow agreement provided for payment in full within a reasonable time, and no such payment was made, we conclude that the possession of the grandsons was a tenancy at will only. That tenancy at will was terminated in the justice court. The subsequent trial in the district court related to the title to the land, and we affirm the

judgment of the district court that the title is in the plaintiff.

Affirmed.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

PEDERSON, Justice (dissenting).

When a case which has been tried to a court without a jury is appealed to this Court, the appellant can claim that either (1) one or more of the findings of fact are clearly erroneous [Rule 52a, N.D.R.Civ.P.], or (2) the trial court erroneously applied the law.

Although a motion to amend the findings under Rule 52(b), N.D.R.Civ.P., is not a prerequisite to appellate review [5A Moore's Federal Practice, ¶ 52.11(4)] and the burden is not on the appellant to request specific findings [*Finney v. Arkansas Board of Correction*, 505 F.2d 194 (8th Cir. 1974)], there are contrary holdings and many courts, including this one, have recommended greater use of Rule 52(b) motions. See *Schock v. Ocker*, 248 N.W.2d 786 (N.D. 1976); *Jahner v. Jacob*, 233 N.W.2d 791 (N.D.1975); and cases cited in 5A Moore's Federal Practice. There are some valid reasons. First of all, Rule 52 is a part of the rules governing practice in the trial court and is not to be reserved for use only in those cases where an appeal is contemplated. Greater attention to proper findings and more use of Rule 52(b) motions calling matters to the trial judge's attention might entirely obviate the need for an appeal. Obviously, too, there are situations where it would be unproductive to move for adoption of a finding that contradicts another finding, which the court has specifically considered and adopted.

Another important reason for refining findings in the trial court is that, on appeal, the appellate court must be able to obtain a clear understanding of the basis for the trial court's conclusions from the findings of fact (or from the memorandum opinion). See *Ellendale Farmers Union Cooperative Ass'n v. Davis*, 219 N.W.2d 829, 836 (N.D. 1974).

We rely to a major extent upon interpretations in the federal courts of Federal Rule 52, from which our Rule was patterned. Federal courts have consistently held that parties may not waive the requirement for findings of fact, specially stated so as to permit a clear understanding. See *Swanson v. Levy*, 509 F.2d 859 (9th Cir. 1975).

The majority opinion applies Rule 52(a) and finds nothing clearly erroneous. When I read the findings, none of which were specifically attacked by appellant, I find them confusing and contradictory. I would therefore remand, pursuant to the provisions of § 28–27–29, NDCC, for the preparation of proper findings or for retrial.