SWANSON & YOUNGDALE,
INC., Appellee,

v.

SEAGRAVE CORPORATION, a Delaware
Corporation, Appellant.

No. 77–1021.

United States Court of Appeals,
Eighth Circuit.

Submitted May 20, 1977.

Decided Sept. 9, 1977.

Charles Quaintance, Jr., Minneapolis, Minn., for appellant.

George C. King, St. Paul, Minn., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and WEBSTER, Circuit Judges.

HEANEY, Circuit Judge.

This action arose out of a dispute between two subcontractors engaged in the construction of the Federal Reserve building in Minneapolis.[1]

The plaintiff, Swanson & Youngdale, Inc., was the painting subcontractor. Flour City Architectural Metals, the Minneapolis division of the defendant Seagrave Corporation, was the subcontractor for the curtain wall, a steel and glass shell encasing the building. Flour City was to cover the steel shell with a first coat of epoxy primer paint. After the erection of the curtain wall, Swanson & Youngdale was to apply a "501" primer paint and two coats of finish paint. Flour City experienced difficulties with the application of the epoxy primer paint and hired Swanson & Youngdale to perform the remedial work required by the architect. Swanson & Youngdale initially "guesstimated" that the total cost of the project would be $5,000. It quoted a base hourly rate of $11.75, to which adjustments up were made for "swing" time,[2] the time of the foreman and overtime. The rate was based upon the wage rate and fringe benefits of a journeyman painter, with an addition for overhead and profit. No monthly bills were sent. After performing the remedial work from August, 1972, to June, 1973, Swanson & Youngdale submitted a bill for $29,843.36, based upon its weekly time records which had been signed by Flour City's foreman. When payment from Flour City was not forthcoming, Swanson & Youngdale sent a letter to Knutson Construction Company, the general contractor, requesting that $30,000 be withheld from Flour City. The general contractor withheld money from Flour City. Swanson & Youngdale next brought this action in the United States District Court for the District of Minnesota.

The action was tried by agreement of the parties before United States Magistrate George G. McPartlin. There were basically three disputes between the parties raised at trial. First, Flour City contended that there was an overlap in the specifications and that it was charged for work that Swanson & Youngdale was itself obligated to perform under its subcontract with the general contractor. Second, Flour City contended that it was entitled to a deduction because of extensive use of apprentices by Swanson & Youngdale. Third, Flour City contended that it should be allowed to assert the claim, by way of setoff or counter-

---

1. Federal jurisdiction is based upon 28 U.S.C. § 1332. The plaintiff, Swanson & Youngdale, Inc., is a Minnesota corporation and has its principal place of business in the State of Minnesota. The defendant, Seagrave Corporation, is a Delaware corporation and its principal place of business is outside the State of Minnesota.

2. "Swing" time refers to the time spent in a bucket suspended from the roof on a cable outside the building.

claim, that Swanson & Youngdale wrongfully interfered with Flour City's contractual right to receive $30,000 from the general contractor. The Magistrate entered judgment for Swanson & Youngdale in the full amount of their claim plus interest. Flour City's appeal to this Court from the Magistrate's judgment was dismissed for lack of jurisdiction on the Court's own motion. *Swanson & Youngdale, Inc. v. Seagrave Corporation*, 542 F.2d 1008 (8th Cir. 1976).[3] The Magistrate then forwarded a memorandum and his findings of fact and conclusions of law to Judge Donald D. Alsop. The Magistrate's findings and conclusions were adopted by Judge Alsop without hearing or argument. This appeal followed.

█ The principal issues raised on appeal are whether the findings of the trial court are adequate with respect to the disputed matters and, if so, whether the findings are clearly erroneous. *See* Fed.R. Civ.P. 52(a). The 1946 Advisory Committee Note to Rule 52(a) states that "the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." While some early cases under Rule 52(a) held that the trial court need only make findings of ultimate facts and need not make findings of subsidiary evidentiary facts, *see Skelly Oil Co. v. Holloway*, 171 F.2d 670, 673 (8th Cir. 1948), it is now clear that findings of ultimate facts are not enough in every case. *See* 9 Wright and Miller, *Federal Practice and Procedure* § 2579 at 710 (1971). Even though findings

of fact are required by Rule 52(a), they are not jurisdictional. 5A *Moore's Federal Practice* ¶ 52.07 at 2731 (2d ed. 1975); 9 Wright and Miller, *supra* § 2577 at 699–700. The appellate court may decide the appeal without further findings if "(1) the record itself sufficiently informs the court of the basis for the trial court's decision on the material issue, or (2) the contentions raised on appeal do not turn on findings of fact." *Finney v. Arkansas Board of Correction*, 505 F.2d 194, 212 n.16 (8th Cir. 1974).

█ In this case, the trial court made no specific finding as to whether or not the parties' responsibilities overlapped and Flour City charged for work that Swanson & Youngdale was itself obligated to perform under its subcontract. The findings of fact merely set forth the specifications describing the work to be performed by the parties,[4] and do not state whether or not the specifications overlapped. However, the Magistrate did state, in a memorandum sent to Judge Alsop, that there was no evidence supporting Flour City's claim that it was charged for work that Swanson & Youngdale were obligated to perform. This statement indicates that the trial court, which adopted the Magistrate's findings of fact and conclusions of law, found that there was no overlap in the specifications and that Flour City was not charged for work that Swanson & Youngdale was itself obligated to perform. Moreover, such a finding would be consistent with the general finding in favor of Swanson & Youngdale.[5] We cannot say that such a finding is

---

**3.** We held that this Court is without jurisdiction to hear appeals from a decision of a United States Magistrate as review of a Magistrate's decision must first be sought in the District Court. *See Reciprocal Exchange v. Noland*, 542 F.2d 462, 463 (8th Cir. 1976); *United States v. Haley*, 541 F.2d 678 (8th Cir. 1974).

**4.** The pertinent part of the specifications governing the work to be performed by Swanson & Youngdale required that it "[t]ouch-up prime coats to provide a continuous primed surface." The specifications governing the work to be performed by Flour City required that "[a]t completion of erection touch up all field weld areas, bolt heads, nuts and other fasteners, and all areas of marred or missing shop coat to

provide a completely primed steel surface. Blast-clean surfaces to be touched up same as specified for shop painting preparations. Touch-up with paint same as used for shop-painting."

**5.** "In some cases if he [the trial court] fails to make a finding on a particular fact it has been assumed that * * * he impliedly made a finding consistent with his general finding." 9 Wright and Miller, *Federal Practice and Procedure* § 2579 at 712–713 (1971). *See Clinkenbeard v. Central Southwest Oil Corp.*, 526 F.2d 649, 652 (5th Cir. 1976); *Burkhard v. Burkhard*, 175 F.2d 593, 596 (10th Cir. 1949).

clearly erroneous as there is evidence in the record that there was no overlap.[6]

■ The trial court made no specific finding with respect to whether Flour City was entitled to a deduction for Swanson & Youngdale's use of apprentices. Nor is any mention made of this issue in the Magistrate's memorandum. The trial court found that the base rate was $11.75 with adjustments up for "swing" time, the time of the foreman and overtime. It made no finding as to whether the parties had specifically agreed that the rate was to be based on the use of journeyman painters and adjusted down for the use of apprentices. Nor did it make any findings with respect to whether it was the custom of the trade to make adjustments both up and down. This is not a case where the record itself reveals the basis of the trial court's decision as there is conflicting evidence as to the basis for the hourly rate. A remand is, therefore, required to permit the trial court to make specific findings on this issue, either on the basis of this record or a supplementary record if necessary.

■ At the time of trial, Flour City sought to raise, by way of setoff or counterclaim, the claim that Swanson & Youngdale wrongfully interfered with the contractual right of Flour City to receive $30,000 from the general contractor. The tort of wrongful interference with contractual rights is recognized under Minnesota law. *See Stephenson v. Plastics Corporation of America*, 276 Minn. 400, 150 N.W.2d 668 (1967);

*Johnson v. Gustafson*, 201 Minn. 629, 277 N.W. 252 (1938). Flour City argues that no interest should be awarded to Swanson & Youngdale because the interference of Swanson & Youngdale deprived it of $30,000 for approximately the same amount of time during which the bill submitted by Swanson & Youngdale for a similar amount was not paid. The trial court awarded interest to Swanson & Youngdale but made no findings as to the claim of interference with contractual rights. While the Magistrate indicated he believed it was too late to raise this issue,[7] he never explicitly so ruled and he did permit evidence to be presented. Without specific findings, however, it is not clear whether interest was awarded because the trial court believed it was too late to raise the claim or because the claim of interference with contractual rights was without merit. Again, a remand is required to permit the trial court to make specific findings with respect to the award of interest and the claim of interference with contractual rights. The findings can be made on the basis of this record or a supplementary record if necessary.

The judgment of the trial court is affirmed in part and remanded to the trial court for further proceedings not inconsistent with this opinion. Each party shall bear its own costs on appeal.

---

**6.** Abe J. Sperling, a registered engineer with experience drafting and interpreting specifications, was permitted to testify over the objection of Flour City, that when the contract is read as a whole, there was no overlapping of responsibilities under the specifications. Flour City contends that it was error to permit his testimony to be offered in rebuttal because Flour City was in effect denied any opportunity to respond. The determination of what constitutes proper rebuttal evidence is within the discretion of the trial judge and we cannot say he abused it here. *See* Fed.R.Evid. 611(a); *cf. United States v. Webb*, 533 F.2d 391, 395–396 (8th Cir. 1976).

**7.** Fed.R.Civ.P. 13(f) provides that "[w]hen a pleader fails to set up a counterclaim through

oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up a counterclaim by amendment." It is within the discretion of the trial court to permit amendment. Fed.R.Civ.P. 15(b) provides, in part, as follows:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.