Colleen Mary· VETTER, now Colleen Mary Goedhart, Plaintiff-Appellant,

v.

Lawrence Charles VETTER, Jr., Defendant-Appellee.

Civ. No. 9426.

Supreme Court of North Dakota.

June 28, 1978.

John T. Schneider, of Schneider & Hilden, Fargo, for plaintiff-appellant.

Ella Van Berkom, Minot, for defendant-appellee.

PAULSON, Justice.

This is an appeal from the supplemental judgment of the district court of McHenry County entered on January 30, 1976, modifying the original judgment which placed the custody of the minor child, Patrick Joseph Vetter [hereinafter Patrick], in his natural father, Lawrence Charles Vetter, Jr. [hereinafter Lawrence], and which judgment removed custody of Patrick from his natural mother, Colleen Mary Vetter, now Colleen Mary Goedhart [hereinafter Colleen]. Lawrence and Colleen were married on April 11, 1970. Patrick was born on April 7, 1971. On December 1, 1975, Lawrence and Colleen entered into a property and custody agreement which placed the custody of Patrick with Colleen, with visitation rights granted to Lawrence. Colleen secured a divorce from Lawrence on the ground of irreconcilable differences on January 30, 1976. The property and custody agreement was incorporated in the decree of divorce.

On August 10, 1977, Lawrence moved to amend the judgment and decree of divorce in order to regain custody of Patrick. The motion was heard before the Honorable Ray R. Friederich on August 22, and on August 26, 1977. After the hearing the district court ordered that the custody of Patrick be vested in Lawrence with visitation rights in Colleen.

Since the divorce, Colleen has continued to reside in the former home of the parties. Colleen's two children, Jessica, age 13, and Sarah, age 11, of a previous marriage which terminated in divorce, resided with her in the Vetter home. His two half-sisters were residing in the parties' home at the time that Patrick was born. Both Jessica and Sarah are supported by their natural father.

During the month of March 1976, Paul Goedhart began living with Colleen and has continued to reside in the Vetter home since that time. Colleen and Paul were married on April 30, 1977. Colleen has been and is employed as a cosmetologist on a regular four-day week basis. She is 32 years of age and in good health. Paul has a camera repair and service business located in the Vetter home.

Lawrence remarried on January 29, 1977, and is employed by the Community Development Office for the City of Minot. His wife, Deborah, is a teacher by profession and is employed by the Makoti School District.

Colleen asserts on this appeal that the district court erred in changing the custody of Patrick to her former husband, Lawrence. She raises the following issues:

(1) Whether the district court issued adequate findings of fact, pursuant to Rule 52(a), N.D.R.Civ.P., as a basis

for its conclusions of law and judgment; and

(2) Whether the district court's finding of fact that the circumstances warranted a change of custody in the best interests of the child was clearly erroneous.

A party seeking modification of a divorce decree awarding custody of a minor child must show a change of circumstances or new facts which were unknown to the moving party at the time the decree was entered. *Bryant v. Bryant,* 102 N.W.2d 800 (N.D.1960). The district court's decision whether to modify the original custody award must be based on what is in the best interests of the child. *Jordana v. Corley,* 220 N.W.2d 515 (N.D.1974). The factors that the district court should consider when making that decision were enumerated in *Goff v. Goff,* 211 N.W.2d 850, 853 (N.D. 1973), as follows:

"The factors for consideration in determining whether there should be a change of custody are the attitudes of the parents toward the child since the divorce, the age of the child, any change of circumstances, the conduct of the custodial party, the morals of the parents, their financial conditions, and any other matters which bear upon the welfare of the child. *Hedman v. Hedman, supra* 62 N.W.2d 223 (N.D.1954). However, the paramount considerations in determining to whom the custody of a child shall be awarded after the divorce of its parents are the welfare and best interests of the child. The interests of the parents are important only to the extent of how their interests bear on the question of what is best for the child."

A finding by the district court, on a motion for change of custody, that the best interests of the child would be served by awarding custody of that child to one party as opposed to the other is appropriately dealt with on appeal as a finding of fact, and review of that finding is limited to a determination of whether or not it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Jordan v. Corley,* 220 N.W.2d 515 (N.D.

1974); *Goff v. Goff,* 211 N.W.2d 850 (N.D. 1973); *see, also, Ferguson v. Ferguson,* 202 N.W.2d 760 (N.D.1972).

Colleen asserts that the findings of fact which were prepared by Lawrence's attorney were not the findings of the trial judge. This argument is unpersuasive. When the trial judge affixes his signature to the findings of fact they become the findings of the court. Colleen also asserts that the findings of fact were inadequately drafted to provide a basis to support the court's conclusions of law and order for judgment. We disagree. The findings of fact and conclusions of law should be stated with sufficient specificity to assist the appellate court by affording it a clear understanding of the trial court's decision. *Fine v. Fine,* 248 N.W.2d 838 (N.D.1976). We conclude that the district court's findings of fact are sufficient to be in compliance with Rule 52(a), N.D.R.Civ.P., as this court can deduce from the findings of fact those factors upon which the judgment is based. *Matson v. Matson,* 226 N.W.2d 659 (N.D. 1975).

In the instant case the trial court found that the best interests of Patrick would be served by awarding his custody to Lawrence. Colleen asserts that she should be allowed to retain custody of Patrick because there has been no substantial change in circumstances since the original custody award and because the trial court's reasons for change of custody are light and transient. The ultimate issue is whether the trial court's finding of fact, that a change of custody was in the best interests of Patrick, is clearly erroneous. We shall review the record accordingly.

The trial judge was obviously impressed by the home which the evidence showed Lawrence and Deborah could provide for Patrick. In contrast, the trial judge could conclude from the evidence that in Colleen and Paul's home there was a lack of care for Patrick as well as a lack of discipline. The trial judge was also obviously impressed with the opportunities that Lawrence could provide Patrick to learn good

work habits within a family atmosphere where Patrick's father was present, not only to discipline and teach but also to set an example. That a loving father's presence in the home of a boy of this age is valuable is an accepted fact of life. *Jordana v. Corley*, 220 N.W.2d 515, 521 (N.D. 1974).

The testimony revealed that Patrick was left alone during several noon hours. At such time Patrick would telephone his father and state that he was lonesome and had nothing to eat. From the evidence introduced at the hearing, one could reasonably conclude that Patrick was frequently left alone to care for himself with little or no adult supervision.

Lawrence testified that he was deeply interested in the education of his son Patrick. Lawrence contacted the first-grade teacher and the principal of Patrick's school who informed him that Patrick was not prepared to enter the first grade without assistance and counseling. Patrick was evaluated by the North Central Mental Health Clinic and its report, which is part of the record, reveals that Patrick required further preparation before entering the first grade at school. Lawrence requested Colleen to see that Patrick received this necessary preparatory education during the summer months, but Colleen refused on the basis that she would be unable to take a summer vacation if Patrick were attending summer school.

The evidence also revealed that Patrick suffered from a dermatitis condition of his scalp. This condition remained unattended until Lawrence sought medical diagnosis and obtained a prescription shampoo which he gave to Colleen and requested that she use it on Patrick.

From the evidence one could reasonably conclude that Patrick was generally unkempt and unclean.

One could reasonably conclude from the evidence that Patrick was moved from his own room into a hallway in order that Colleen's husband, Paul, could operate his camera repair and service business in Patrick's room.

The evidence also revealed that Lawrence and Deborah live in their own home in Minot. Lawrence is employed by the Community Development Office and is highly regarded by the director and his colleagues. Deborah is a teacher by profession, and she testified that she is very interested in Patrick and would be happy to have Patrick in her home.

The trial judge has the responsibility of determining the credibility of witnesses and weighing the evidence. The trial judge in the instant case is the same judge who presided at the divorce proceedings. He is familiar with all of the facts adduced as a result of the domestic problems of these parties and of their respective fitness as parents, and, accordingly, he determined it was in the best interests of Patrick to place him in the custody of his father. Upon a careful examination of the record, we conclude that the trial court's findings of fact were not clearly erroneous. Accordingly, the judgment of the district court awarding custody of Patrick to his father is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VOGEL, JJ., concur.

PEDERSON, Justice, dissenting.

The following were the only findings of fact made in this case:

"I.

"That a decree of divorce was entered in the above entitled matter on January 30, 1976, which provided the care, control and custody of the minor child, Patrick Joseph Vetter, be in the plaintiff.

"II.

"That since that time there have been many changes in the family situation which increases the need of this child to be under the influence of someone as close as his father.

"III.

"That the plaintiff has remarried. That there are two children by a previous marriage and whose father lives in New Hampshire. That the plaintiff has married a man with whom she lived for 13 months prior to the marriage.

"IV.

"That the circumstances in the home of the plaintiff are such as to create a situation difficult for the minor child, Patrick Joseph Vetter, born April 7, 1971, was best served in the care, control and custody of his father, Lawrence Charles Vetter, Jr."

Colleen says that they are inadequate to inform her or this Court of the basis of the decision. She contends that she must know that basis in order to direct her attack properly on the appeal. I agree with her contention.

Two issues confronting this Court in this case are identical to those considered in the case of *Warner v. Johnson*, 213 N.W.2d 895 (N.D.1973):

(1) Must the trial court's findings of fact fail simply because they are copied from proposed findings submitted by counsel for the victorious party?

(2) Where may this Court look when inadequate findings do not reveal the basis for decision?

The *Warner* court concluded that findings of the trial court would be measured by Rule 52(a), N.D.R.Civ.P., to determine if they were clearly erroneous, regardless of their resemblance to counsel's proposed findings. In answering the second question, the Court determined that an oral opinion of the trial court could be consulted. The Court unanimously affirmed the judgment in that case and, without a careful comparison of the circumstances, one would offhand conclude that the rule of "stare decisis et non quieta movere" would demand affirmance of the judgment in this case. I must point out why a careful comparison requires that this case be remanded for preparation of proper findings and the possible taking of additional evidence.

In *Warner v. Johnson, supra,* Justice Knudson analyzed the findings of fact and the six-page oral opinion. That analysis enabled the Court to understand the basis for the findings made and then to determine, from the record, that there was substantial evidence in support of those findings. Because, in the instant case, the oral opinion is of no aid in understanding, the majority has chosen to make a trial de novo review in order to affirm the judgment.

This Court will, we have said, look to the oral opinion to explain findings of fact. The entire portion of the oral opinion, as it relates to changed circumstances, is set forth below.

"I come to the conclusion that since this divorce was granted and the custody of the child placed with the mother there have been changes that have occurred in the family. There have been changes in the age of this child, that age I believe increases the need to be under the influence of someone as close as his father. I am not unmindful of the fact that in this family there are already two children by a prior marriage and there is now that fact coupled with a husband who is neither the father of these two children by a prior marriage nor the father of this child and I can readily understand that for a boy of this age that circumstance would be difficult to appreciate and probably impossible to cope with. . . . and when I view all of these facts and circumstances as I have pointed them out here including others that I have in the back of my mind and are the basis of the testimony I come to the conclusion that the motion to modify the divorce decree as it pertains to the custody of this minor child Patrick is granted."

These explanations do not provide me with an understanding of the basis for the trial court's determination that a significant change in circumstances had occurred since the divorce decree which awarded custody of the child to the mother. In effect, the court said, "The boy is older, and thus needs a father, the mother has remarried, and when I view these facts, along with those in the back of my mind, I conclude that custody must be changed."

The majority opinion says that the trial judge was obviously impressed by the home the father could provide. The trial court made no such finding. The majority opinion says that the trial judge "could con-

clude" that there was lack of care and discipline of the child in the mother's home. The trial court made no such finding. The majority opinion says that the trial judge was "obviously impressed" with the opportunities the father could provide. The trial court made no such finding.

The majority, citing an opinion I authored (*Matson v. Matson*, 226 N.W.2d 659 (N.D.1975), asserts that this Court can deduce, from the findings of fact, those factors upon which the judgment is based. I believe that the majority is deducing nothing from the findings except the conclusion. The majority then searches far and wide, through the entire record, to locate facts to justify findings. That is trial de novo. It is very different from what we did in *Matson*, i. e., determine that the factors identified in the findings were indeed supported in the record. In the instant case, even if the findings have ample support in the record, they provide no basis for a change of custody. If the boy needs someone "as close as his father," why is his mother's remarriage the other factor which appears to influence the trial court? The majority granted trial de novo to find out.

When we do not know the basis for a trial court's determination, we either have to remand and ask the judge to tell us, or we have to try the case ourselves from the record. The majority has taken the latter course. I am not sure that the majority opinion reaches the wrong decision, based on changes which have occurred since custody was awarded to the mother and as to what is in the best interest of the child. But those are trial court functions; ours is only an appellate review function. I would vacate the judgment and remand for the making of more specific findings and, if deemed necessary by the trial court, the taking of additional evidence as was done recently in *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 267, 97 S.Ct. 2766, 51 L.Ed.2d 851 (1977), and as we did in *DeForest v. DeForest*, 228 N.W.2d 919 (N.D.1975). See, also,

*Struchynski v. Decker*, 194 N.W.2d 741 (N.D.1972).

My views, to the extent that they apparently differ from the views of my colleagues on how Rule 52(a), N.D.R.Civ.P., should work and how it was intended to operate, have been reflected in a series of cases starting with *Square Butte Elec. Coop. v. Hilken*, 244 N.W.2d 519 (N.D.1976), followed by *Mattco, Inc. v. Mandan Radio Ass'n, Inc.*, 246 N.W.2d 222 (N.D.1976); *Fortman v. Manthey*, 248 N.W.2d 821 (N.D. 1976); *Fine v. Fine*, 248 N.W.2d 838 (N.D. 1976); *Peoples Bank and Trust v. Reiff*, 256 N.W.2d 336 (N.D.1977); *Haugeberg v. Haugeberg*, 258 N.W.2d 657 (N.D.1977); *Matter of Estate of Koch*, 259 N.W.2d 655 (N.D.1977); *Becker v. Becker*, 262 N.W.2d 478 (N.D.1978); and *Rummel v. Rummel*, 265 N.W.2d 230 (N.D.1978). I began to see little purpose in repeating myself. Until the instant case, I was beginning to feel that no member of the Bar of this State had concerns similar to mine nor could see any merit in the position which I tried to articulate. Like the old philosopher in Ecclesiastes, Chapter 2, Verse 17, I was beginning to feel that: "It had all been useless; I had been chasing the wind."[1]

I am not certain yet that there isn't some handwriting on the wall meant for me and that I should accept some advice from (the late) songwriter Jim Croce:

"You don't tug on Superman's cape

You don't spit into the wind

You don't pull the mask off the old Lone Ranger

And you don't mess around with Jim."[2]

Most lawyers appear to prefer trial anew on appeal and, when I first learned of the abolishment of trial de novo, I was as dismayed as anyone. After devoting my best efforts to an understanding of Rule 52(a), I have had to change my "thought patterns nurtured under antiquated procedural sys-

---

1. From the Good News Bible, Today's English Version.

2. *You Don't Mess Around With Jim*, Copyright 1971, Jim Croce, Blendingwell Music, Inc. (ASCAP), Wingate Music Corp. (ASCAP).

tems."[3] I now believe that the rule will serve those functions that the early writers said it would—but only if lawyers, trial judges and appellate judges exert a little effort to perform their separate functions under the rule. I agree completely with that part of Justice Vogel's dissent in *Becker v. Becker,* 262 N.W.2d 478, 487 (N.D. 1978), wherein he said:

".   .   . if the court is determined to modify Rule 52(a), it should be done by the same process by which the rule was first adopted—a written proposal, communicated to the Bar and the public, and a decision to adopt the rule, made after public notice and hearing, as required by Sections 27–02–08 to 27–02–15, N.D.C.C."

The real question is—who is trying to modify Rule 52(a) by decisions? From 1895 (R.C.1895, § 5630) until 1971 (Ch. 311, § 2, S.L.1971), in appeals from judgments in actions tried to the court without a jury, it was possible for the appellant to obtain a trial anew of questions of fact. See § 28–27–32, NDCC.

From 1895 (R.C.1895, § 5453) until the North Dakota Rules of Civil Procedure superseded § 28–16–04, NDCC, in 1957, it was permissible for the trial court to direct that a party to the action prepare the findings. See Rule 86, N.D.R.Civ.P., and footnote in *Malarchick v. Pierce,* 264 N.W.2d 478, 479 (N.D.1978).

Immediately prior to its repeal, § 28–27–32, NDCC, contained the provision that "failure of the court to make findings upon all the issues in the case shall not constitute a ground for granting a new trial or reversing the judgment."

"When we adopted Rule 52 from the Federal Rules of Civil Procedure, we did so with knowledge of the interpretations placed on it by the Federal courts. Although we are not compelled to follow those interpretations, they are highly persuasive and, in the interest of uniform interpretation, we should be guided by them." *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973).

One of the highly persuasive interpretations of Rule 52(a) by a Federal court was authored by Circuit Judge Frank and concurred in by Judges Hand and Clark, *United States v. Forness,* 125 F.2d 928 (2d Cir. 1942). That opinion was very critical of findings prepared by winning counsel and mechanically adopted by the trial court. Most of the circuit courts, the United States Supreme Court, and many state supreme courts have cited the *Forness* opinion as significant authority on the interpretation of Rule 52.

"We stress this matter because of the grave importance of fact-finding. The correct finding, as near as may be, of the facts of a law suit is fully as important as the application of the correct legal rules to the facts as found. An impeccably 'right' legal rule applied to the 'wrong' facts yields a decision which is as faulty as one which results from the application of the 'wrong' legal rule to the 'right' facts. The latter type of error, indeed, can be corrected on appeal. But the former is not subject to such correction unless the appellant overcomes the heavy burden of showing that the findings of fact are 'clearly erroneous.' Chief Justice Hughes once remarked, 'An unscrupulous administrator might be tempted to say "Let me find the facts for the people of my country, and I care little who lays down the general principles."' [Footnote omitted.] That comment should be extended to include facts found without due care as well as unscrupulous fact-finding; for such lack of due care is less likely to reveal itself than lack of scruples, which, we trust, seldom exists. And Chief Justice Hughes' comment is just as applicable to the careless fact-finding of a judge as to that of an administrative officer. The judiciary properly holds administrative officers to high standards in the discharge of the fact-finding function. The judiciary should at least measure up to the same standards.

· "It is sometimes said that the requirement that the trial judge file findings of

**3.** Judge Yankovich, 1 F.R.D. 453, 490.

fact is for the convenience of the upper courts. While it does serve that end, it has a far more important purpose—that of evoking care on the part of the trial judge in ascertaining the facts. [Footnote omitted.] For, as every judge knows, to set down in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty: *Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper.* The trial court is the most important agency of the judicial branch of the government [Footnote omitted.] precisely because on it rests the responsibility of ascertaining the facts. [Footnote omitted.] When a federal trial judge sits without a jury, that responsibility is his. And it is not a light responsibility since, unless his findings are 'clearly erroneous,' no upper court may disturb them. To ascertain the facts is not a mechanical act. It is a difficult art, not a science. It involves skill and judgment. As fact-finding is a human undertaking, it can, of course, never be perfect and infallible. For that very reason every effort should be made to render it as adequate as it humanly can be. [Footnote omitted.] *United States v. Forness,* 125 F.2d at 942, 943, *supra.* [Emphasis added.]

For another highly persuasive and often-cited opinion articulating the appropriate application of Rule 52, see opinion of Judge Albert B. Maris in *Roberts v. Ross,* 344 F.2d 747 (3d Cir. 1965), which this Court relied on in *Warner v. Johnson,* 213 N.W.2d 895 (N.D.1973).

"It is interesting to note that when the *Roberts* case was returned to the district court for a complete reexamination of the record and the filing of appropriate findings and conclusions, the district court, without a hearing or new trial, reversed its former decision and held for the party against whom it had held initially. See Note, 1966, 51 Cornell L.Q. 567." 9 Wright and Miller, Federal Practice and Procedure, § 2578, p. 706, n. 16.

The significance of the role that judicial writing plays in the decision-making process was recently expressed by Justice Levin in his dissent to a per curiam opinion by the Supreme Court of Michigan, *Am. Ind. Party of Mich. v. Sec'y of State,* 397 Mich. 689, 247 N.W.2d 17, 26 (1976). He said:

"The process of putting thoughts on paper, of grappling with the precedents, and of assembling an orderly analysis constitutes a crucial check on judicial oversight, error and arbitrariness."

This Court, in an unanimous opinion written by Chief Justice Erickstad in *Eichenberger v. Wilhelm,* 244 N.W.2d 691, 695 (N.D.1976), said:

"In *Warner v. Johnson,* 213 N.W.2d 895, 897 (N.D.1973), we noted that the purposes of requiring findings of fact in accordance with Rule 52(a), N.D.R.Civ.P., include affording the appellate court a clear understanding of the basis of the trial court's decision, making certain for purposes of estoppel and res judicata precisely what has been determined, and encouraging the trial judge to be careful in ascertaining the facts. We also referred to criticism of the practice of a trial court accepting findings prepared by the successful party, . . ."

In an earlier, and also unanimous, decision, *DeForest v. DeForest,* 228 N.W.2d 919, 924 (N.D.1975), this Court reversed that part of *Bryant v. Bryant,* 102 N.W.2d 800 (N.D.1960), which had held that this Court may presume that the trial court awarded custody upon the basis of the best interest of the child, holding that:

"A finding of fact on a controlling issue which fails to show the basis for a trial court's conclusion is held to be clearly erroneous."

See, *Kraemer v. Kraemer,* 67 Wis.2d 319, 227 N.W.2d 61 (1975), cited in *DeForest.*

Recently we reiterated unanimously that:

". . . custody, once granted, should not be changed for light or transient reasons . . ."

and

". . . fitness of parents is not the test for awards-of-custody matters in this

State." *Odegard v. Odegard,* 259 N.W.2d 484, 485, 486 (N.D.1977).

Justice Brennan, writing for the majority in *Commissioner v. Duberstein,* 363 U.S. 278, 292, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), in remarks that were apparently agreed upon only by four justices, discussed Rule 52 and said: ". . . conclusory, general findings do not constitute compliance with Rule 52's direction to 'find the facts specially and state separately . . . conclusions of law thereon.'" The trier of fact in *Duberstein* had made a simple and unelaborated finding that the transfer in question was a "gift." While praising conciseness and avoidance of prolixity, Justice Brennan said that "there comes a point where findings become so sparse and conclusory as to give no revelation of what the District Court's concept of the determining facts and legal standard may be."

Judge Heaney, writing for the Eighth Circuit Court of Appeals in *Swanson & Youngdale, Inc. v. Seagrave Corp.,* 561 F.2d 171, 173 (8th Cir. 1977), more fully articulated the point made by Justice Brennan as follows:

"The principal issues raised on appeal are whether the findings of the trial court are adequate with respect to the disputed matters and, if so, whether the findings are clearly erroneous. See Fed. R.Civ.P. 52(a). The 1946 Advisory Committee Note to Rule 52(a) states that 'the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts.' While some early cases under Rule 52(a) held that the trial court need only make findings of ultimate facts and need not make findings of subsidiary evidentiary facts, *see Skelly Oil Co. v. Holloway,* 171 F.2d 670, 673 (8th Cir. 1948), it is now clear that findings of ultimate facts are not enough in every case. See 9 Wright and Miller, *Federal Practice and Procedure* § 2579 at 710 (1971). Even though findings of fact are required by Rule 52(a), they are not jurisdictional. 5A *Moore's Federal Practice* ¶ 52.07 at 2731 (2d ed. 1975); 9 Wright and Miller, *supra* § 2577 at 699–700. The appellate court may decide the appeal without further findings if '(1) the record itself sufficiently informs the court of the basis for the trial court's decision on the material issue, or (2) the contentions raised on appeal do not turn on findings of fact.' *Finney v. Arkansas Board of Correction,* 505 F.2d 194, 212 n. 16 (8th Cir. 1974)."

Judge Heaney omitted a significant part of footnote 16 from *Finney,* which provided:

"While this court may review a decision in the absence of factual findings, it may not make its own findings of fact." *Finney v. Arkansas Board of Correction,* 505 F.2d 194, 212, n. 16 (8th Cir. 1974).

The next logical question is—how can an appellate court review a judgment on appeal, where there are no findings of fact, without a trial de novo? This Court, in effect, decided in the case of *Struchynski v. Decker,* 194 N.W.2d 741 (N.D.1972) that it would not return to trial de novo reviews on appeals.

Applying the aforementioned rules to the circumstances in this case I find as significant controlling issues:

(1) Is there significant reason for concluding that circumstances have changed since the divorce to warrant a change of custody?

(2) Is there sufficient reason to find that the child's best interest is served by a change of custody?

There are simple and unelaborated findings that the circumstances have changed and that it is in the child's best interest that custody be changed. I think that these findings are "so sparse and conclusory as to give no revelation of what the District Court's concept of the determining facts and legal standard may be."